## LIPPS v. STATE OF INDIANA.

[No. 81128. Filed May 26, 1970. No petition for rehearing filed.]

*William T. Laswell,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General and *Curtis Plopper,* Deputy Attorney General, for appellee.

JACKSON, J.—This is an appeal from the judgment of the Marion Criminal Court Division II entered against the appellant after he had been found guilty, after a trial by jury, of the crime of inflicting physical injury while attempting robbery as charged in Count II of the indictment.

The appellant's motion for a new trial, in which it was alleged only that the verdict of the jury was not sustained by sufficient evidence and is contrary to law, was filed on December 22, 1966, and overruled on the same day. On appeal the appellant's only assignment of error is that the trial court erred in overruling the appellant's motion for a new trial.

The indictment charging the appellant was filed on September 9, 1966, and is in two counts which read, in pertinent part, as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that BUFORD RAY LIPPS, GERALD HAINES and GEORGE HESTAND on or about the 14th day of JULY, A.D. 1966, at and in the County of Marion and in the State of Indiana, each being

then and there over the age of sixteen (16) years, did then and there unlawfully, feloniously, forcibly, by violence and by putting DANIEL WHEELER in fear with a firearm, to-wit: a Shotgun, the exact nature and description of which is to the Grand Jurors unknown, attempt to take from the person and possession of the said DANIEL WHEELER United States currency, of which United States currency the said DANIEL WHEELER then and there held in his possession and which money was then and there the property of SPEED EAGLE LOUNGE, INC., d/b/a DAYMON'S LOUNGE, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

*COUNT TWO:*

The Grand Jurors aforesaid, upon their oaths aforesaid, do further present that BUFORD RAY LIPPS, JAREL HAINES and GEORGE HESTAND, on or about the 14th day of July, A.D. 1966, at and in the County of Marion and in the State of Indiana, did then and there unlawfully, feloniously, forcibly, by violence and by putting DANIEL WHEELER in fear attempt to take from the person and possession of the said DANIEL WHEELER United States currency, which money the said DANIEL WHEELER then and there held in his possession and which money was then and there the property of SPEED EAGLE LOUNGE, INC., d/b/a DAYMON'S LOUNGE, and the said BUFORD RAY LIPPS, JAREL HAINES and GEORGE HESTAND while engaged in committing the crime of Attempted Robbery as aforesaid, did then and there unlawfully and feloniously inflict a physical injury, to-wit: a wound in and upon the leg of the said DANIEL WHEELER with a shotgun then and there held in the hands of the said BUFORD RAY LIPPS, JAREL HAINES and GEORGE HESTAND, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

From the evidence adduced at trial, it appears that at approximately 1:20 a.m. on July 14, 1966, three armed subjects entered a tavern known as Daymon's Lounge located at 2070 Lafayette Road in Marion County, Indiana. Shortly after the three men entered several shots were fired, and one of the armed men called out, "Everybody sit tight. This is a holdup." Two police officers who were in the tavern at that time jumped

up from the table where they were sitting. One officer proceeded toward an armed subject who had gone to the cash register. One of the men, who was armed with a pistol, fired at the officer, who, in turn, returned the fire. Subsequently, numerous shots were fired, both by the police officers and the armed subjects. When the shooting was over the two police officers and the bartender were wounded, and one of the subjects was dead. The other two holdup men escaped.

The dead holdup man was subsequently identified as Thomas Pierce. The other two men could not be identified since, at the time of the holdup, their faces were covered with stocking masks.

The appellant was subsequently implicated in the shooting and attempted robbery, and a warrant was issued for his arrest on July 29, 1966. On August 12, 1966, the appellant was arrested by a deputy sheriff who recognized the appellant while the appellant was walking along highway 421.

The only issue argued by the appellant on this appeal is that the trial court erred in allowing into evidence, over the appellant's objections, testimony of a newspaper reporter who testified about a conversation he had with the appellant and George E. Hestand while the two were in jail awaiting trial.

The State contends that this argument is not properly before this Court since the objections to the testimony were not specifically set out in the appellant's motion for a new trial pursuant to Supreme Court Rule 2-6, and for the further reason that the appellant's motion for a new trial and assignment of errors are not set out in the appellant's brief pursuant to Rule 2-17.

It is true, as the State contends, that the appellant's appeal fails to meet the minimum procedural requirements as specified by the rules of this Court. However, we have followed a policy of deciding appeals on their merit where it is reasonable and practical for us to do so. *Locke* v. *State* (1969), 252 Ind.

480, 250 N. E. 2d 372; *Lytle* v. *State* (1968), 251 Ind. 413, 241 N. E. 2d 366. Furthermore, refusal to determine this appeal on its merits would merely create additional burdens later on for both this Court and the trial court since the appellant may pursue post conviction relief under either Rule PC-1 or PC-2.

Since post conviction relief is now available for those whose appeals have been adversely decided on procedural grounds, and since it is absolutely necessary for this Court to maintain an orderly system of procedure and in its operation to insure its integrity and to conserve the time and energy of the Court, we serve notice that procedural defects in appeals which are brought in the future may not be dealt with so leniently. Time and the increasing volume of cases militate against tolerance of the careless practices by too many attorneys who practice before this Court.

In saying this we do not mean to cast aspersions on the attorney who is representing the appellant in this appeal. The argument he presents to us is cogently and intelligently written and obviously represents a great deal of effort on his part. Moreover, he is not the same attorney who represented the appellant at trial and who filed the appellant's motion for a new trial.

Turning to the merits of the appeal before us, it is the appellant's contention that the trial court erred in allowing a newspaper reporter, one Richard Johnson, to testify, over the appellant's objection, to a conversation that he had with the appellant and George E. Hestand while the two were in jail awaiting trial.

According to the testimony of the witness, the wife of George E. Hestand called the witness' office and left a message that the appellant and Hestand wanted to speak with him. Mr. Johnson then stated that he arranged to see the appellant and Hestand in the jury room of Criminal Court II on either the

13th or 16th day of September, 1966. Mr. Johnson testified that during the course of the interview the appellant admitted shooting the bartender in Daymon's Lounge.

At trial the appellant objected to the testimony of the witness on the basis that any statements given to Johnson were given in confidence. The objections were correctly overruled by the trial court. Ind. Ann. Stat. § 2-1714 (1968 Repl.) provides that only the following shall be deemed privileged communications:

> "2-1714. Who are incompetent.—The following persons shall not be competent witnesses:
>
> * * * *
>
> Third. Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases.
>
> Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases.
>
> Fifth. Clergymen, as to confessions or admissions made to them in the course of discipline enjoined by their respective churches.
>
> Sixth. Husband and wife, as to communications made to each other."

Nowhere does the above statute provide for privileged communication between a defendant in a criminal case and a newspaper reporter. Moreover, since the very nature of the reporter's work requires him to divulge the information he receives, albeit not the source, anyone wishing to rely on the confidential status of information given to a newspaper reporter must do so at his own peril. While Indiana does have a statute protecting a newspaper reporter from being compelled to disclose the source of his information, see Burns Ind. Ann. Stat. § 2-1733 (1968 Repl.), the statute creates a right personal to the reporter which only he may invoke. In the case at bar, however, Johnson was willing to testify, and thus did not invoke the immunity afforded by

the statute. Further, since the right created by § 2-1733, *supra,* is a right personal to the reporter only, it cannot be invoked by the person who communicated with the reporter and now seeks to prevent the reporter from testifying. The privilege against testifying belongs solely to the reporter, and it can be claimed only by him. See, 8 Wigmore on Evidence § 2196 (1961).

The appellant next contends that it was prejudicial error to allow Johnson to testify as to the statements allegedly made to him by the appellant since the appellant had not been advised of his constitutional rights prior to meeting with Johnson. In support of this contention the appellant relies heavily on *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, 84 S. Ct. 1602.

In *Miranda* v. *Arizona, supra,* the Supreme Court of the United States ruled that a suspect taken into custody and subjected to questioning must first be advised of certain constitutional rights. The pertinent portion of the court's opinion in which the rule is enunciated reads as follows:

> "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 16 L. Ed. 2d 726.

The whole thrust of the *Miranda* decision, however, was to ensure that the constitutional rights of a criminal defendant are made known to him at a critical stage of the proceedings, and to ensure that they are enforced by requir-

ing the presence of an attorney if one is requested by the accused, during any interrogation. The evils at which *Miranda* struck were those pressures and techniques employed by investigating officers to induce a criminal suspect to admit participation in a crime. It was because the court was cognizant of the physical and psychological means of coercion available to the police to obtain confessions that it placed the above requirements on pre-trial custodial interrogation. We reiterate that *Miranda* was directed toward the evils of station house interrogation, and the accompanying denial of fundamental constitutional rights at a stage in the proceedings when those rights are most important.

In the case at bar, however, the appellant does not contend that the investigating officers did not properly advise him of his constitutional rights in accordance with *Miranda* v. *Arizona, supra.* Instead, the appellant contends that he should have been warned of these rights prior to an interview that the appellant and his co-defendant arranged with a newspaper reporter.

With this contention we do not agree.

As was stated above, *Miranda* v. *Arizona, supra,* applies to interrogation of a suspect while in the custody of the police. Here, while the appellant may have been in police custody, the record is totally devoid of any evidence of police interrogation during the events in question. While it is conceivable that in a given situation a third person may be acting as an agent for the police, in which case a *Miranda* warning would conceivably be required, the evidence in the case at bar does not support the conclusion that Johnson was acting as an agent for the police.

Further, the record is barren of any evidence that the appellant was interrogated by Johnson. Rather, the only reasonable conclusion that may be drawn from the evidence in the record is that Johnson met with the appellant at the

appellant's request. While it is true that Johnson spoke with the police prior to meeting with the appellant, there is also evidence that Johnson informed the appellant of this fact. Further, merely because Johnson informed the police that he was to meet with the appellant does not mean that he agreed to work for the police to obtain information from the appellant. Finally, according to Johnson's testimony, he informed the appellant that the police wanted the appellant to give them a statement.

On the basis of the evidence in the record, therefore, we cannot say as a matter of law that Johnson was acting as an agent of the police. Merely because the appellant alleges that he was does not make it so. Further, merely because Johnson spoke with the police about the interview does not establish that Johnson was working in their behalf. It would be strange indeed if anyone other than an inmate's relatives or attorney were able to interview an inmate of a jail in the manner in which the appellant was interviewed, without informing the police of his intention to do so.

Finally, *Miranda* was intended to protect the constitutional rights of a criminal suspect by shielding the suspect from the coercive practices and atmosphere associated with in custody police interrogation. It was not, however, intended to protect a criminal defendant from his own voluntary statements made to a private citizen in an interview requested by the defendant, and which was conducted without the presence of a police officer. In such a case as this, the considerations behind the Supreme Court's ruling in *Miranda* v. *Arizona, supra,* are simply not present.

Since the appellant, and not Johnson or the police, arranged for the interview, and since there is no evidence that Johnson was working as an agent of the police when he met with the appellant, we hold that the appellant, prior to meeting with the reporter, was not entitled to the various warnings

enunciated by the Supreme Court in *Miranda* v. *Arizona,* *supra.* It was therefore not reversible error for the trial court to have admitted the testimony of Johnson into evidence.

The judgment of the trial court is affirmed.

Hunter, C.J., and Arterburn, DeBruler and Givan, JJ., concur.

NOTE.—Reported in 258 N. E. 2d 622.