GARRY TYROME SEAY *v.* STATE OF INDIANA.

[No. 1-475A68. Filed November 25, 1975. Rehearing denied January 20, 1976.]

24

*John D. Clouse,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Joseph H. Reiswerg,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Garry Tyrome Seay (Seay) brings this appeal from a conviction of two counts of assault and battery with intent to kill.[1]

## FACTS:

On the night of May 3, 1974, Seay, then seventeen (17) years old, met one Timothy Boyd at a pool hall in Evansville. Prior to their meeting Seay had procured a pistol which he kept hidden near his home.

While at the pool hall the talk among those present focused on an acquaintance of Seay's who had been shot by police, and the feeling that too many black people were being shot.

Sometime shortly after 1:00 A.M. Seay and Boyd left the pool hall and proceeded to the corner of Lincoln and Governor Streets. While Seay was near the corner, Don and Peggy Hamilton approached in their car and stopped at a stop light. As the Hamiltons waited for the light to change, Don noticed a black man crouched and pointing a gun at him. The pistol was fired twice, and Don was struck in the arm and Peggy was shot in the head.

Boyd testified that he ran when Seay pulled out a pistol and did not see Seay aim at the car. Boyd, however, saw the car run the red light, and saw Seay replace a pistol in his pants.

---

1. IC 1971, 35-13-2-1, Ind. Ann. Stat. Sec. 10-401a (Burns Supp. 1974).

Further, another acquaintance of Seay's, Mike Scales, testified that on May 6, 1974, Seay came to him and stated that he thought he had shot someone. Seay gave the pistol to Scales, and police later recovered it at Scales' residence. The pistol recovered by police was identified by Scales as the one he received from Seay. Additionally, slugs and shell casings found near the scene of the shooting were matched with test firings from the pistol.

Subsequently, on May 9, 1974, Officer Coleman of the Vanderburgh Sheriff's Department approached Seay and requested that he go to the Sheriff's office. After arriving at the office, Coleman ascertained the name and address of Seay's guardians and contacted them by telephone.

Coleman advised the guardians of Seay's situation and stated he thought it would be best if one or both of them would come to the station while Seay was being questioned. Coleman also offered to provide transportation to the station house. Although Coleman advised the guardians that Seay had a right to remain silent, and that Seay should have an attorney present for questioning, the guardians stated they did not wish to be present and that Seay could be questioned.

Coleman then proceeded to read a statement of rights to Seay. Following this, Coleman read to Seay a waiver of rights form, and asked Seay if he wanted an attorney or guardian present for questioning. Seay then stated he understood his rights, that he did not wish anyone else to be present, and he signed the waiver form.

Eventually, Seay completed and signed a written statement, in which he admitted the shooting.

Because of the nature of Seay's arguments below, it is necessary that we also present a rather complete set of procedural facts:

On May 31, 1974, after waiver from Juvenile Court, a one-count indictment (#1530) was returned against Seay. Thereafter, on June 7, Seay filed a motion to dismiss the indictment,

alleging a lack of jurisdiction. No further action was taken until August 8th,[2] when the State filed a petition for the waiver of Seay to adult (Circuit) court with regard to Juvenile Cause No. 74-JUV-317, which contained charges for the shooting of Peggy Hamilton.

Next, on August 12th, the Circuit Court ruled on Seay's motion to dismiss indictment #1530 by stating that

"The Court now finds Juvenile Court did not have jurisdiction and therefore orders this cause remanded to Juvenile Court for the purpose of having a hearing to determine whether Juvenile Court should have jurisdiction and if it is determined Juvenile Court does have jurisdiction then whether this defendant should be waived to adult/Circuit court."

Following this action by the court, the State filed a second waiver petition with regard to Juvenile Cause No. 74-JUV-356, which related to charges for the shooting of Don Hamilton. Two weeks later, the trial court granted both of the pending waiver petitions.

Finally, on September 3rd, a two-count information, charging assault and battery with intent to kill both Peggy and Don Hamilton, was filed against Seay and assigned a cause number of 1595. A subsequent motion to dismiss the information was denied, and in the same proceeding the trial court dismissed the cause (indictment No. 1530) which had been previously remanded to Juvenile Court for a determination of jurisdiction of that court.

Seay was eventually tried and convicted of the charges contained in information No. 1595.

## ISSUES:

The questions presented for review are as follows:

1. Whether jurisdiction was ever properly effected in the Juvenile and adult courts involved and, therefore, whether it was error to overrule Seay's motion to dismiss.

2. Seay attained the age of eighteen (18) years on July 29, 1974.

2. Whether it was error for the trial court to deny part of Seay's motion for discovery.

3. Whether Seay was denied a fair trial by the exclusion of Negroes from the jury.

4. Whether the court gave an improper instruction.

5. Whether Seay's confession was properly admitted into evidence.

## I.

The issues set forth above present serious challenges to the propriety of the proceedings below. In reviewing the arguments of appellant Seay, and in considering the various parts of the record before us, we find a disturbing absence of material information. Thus, in considering Seay's arguments this court has inspected the entire transcript, and we will address all issues made apparent by such inspection. While several of the problems to be discussed below are not directly raised by Seay's arguments, such does not preclude this court from a consideration thereof. As was stated in *Summers* v. *State* (1967), 248 Ind. 551, 554, 230 N.E.2d 320,

> "At the outset it should be pointed out that the questions we are deciding here are not specifically raised by the appellant on the appeal, however, in cases where the interests, rights and privileges of juveniles are involved, the rule is stated that this Court is permitted to search the record for a determination of issues inherently revealed by the record." (Citations omitted.) See also, *Hicks* v. *State* (1967), 249 Ind. 24, 230 N.E.2d 757.

In addition, in passing upon the contentions of the parties, we must consider any applicable sections of the juvenile code[3] in light of express statutory provisions and judicial pronouncements.

First, the legislative purpose behind the juvenile code (IC 1971, 31-5-7-1 to 31-5-7-25) is to

---

3. Several sections of the juvenile care act were amended by the 1975 Legislature. However, the sections cited in this opinion are those which were in force when the above proceedings took place.

". . . secure for each child within its provisions such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents.

The principle is hereby recognized that children under the jurisdiction of the court are subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them." IC 1971, 31-5-7-1.

This statement of purpose has been interpreted to mean that there is a presumption in favor of dealing with the delinquent within the juvenile system. *Atkins* v. *State* (1972), 259 Ind. 596, 290 N.E.2d 441, 443. Also, it has been established that all provisions of the juvenile code must be closely followed.

"We know that courts do not assume jurisdiction, *sua sponte.* In proceedings to determine whether or not delinquent, dependent or neglected children should be made wards of the Juvenile Court, the jurisdiction of the court must be invoked by the verified accusation as provided for by Sections 9-3207 and 9-3208, *supra.* Not until the proper charge is filed may the court cite the party charged and attain jurisdiction over his person or the subject matter of the particular case. We believe the Act itself clearly indicates jurisdiction is dependent upon strict compliance with its provisions. 'Statutes which take away, change or diminish fundamental rights, statutory remedies for rights unknown to the common law, and statutes which provide new and extraordinary remedies must be construed strictly both to the cases embraced within their terms and as to the methods to be pursued.' 59 C.J., Sec. 669, p. 1130." *Shupe* v. *Bell* (1957), 127 Ind. App. 292, 295, 141 N.E.2d 351.

Other decisions of courts of this state have elucidated the standards with regard to particular requirements in the juvenile code. *See, Shupe* v. *Bell, supra,* proper filing of a delinquency petition; *In re Johnson etc.* v. *State* (1964), 136 Ind. App. 528, 202 N.E.2d 895, service of process to and appearances by necessary parties; *Hicks* v. *State, supra,* and

*State ex rel. Atkins* v. *Juvenile Ct. of Marion Co.* (1969), 252 Ind. 237, 247 N.E.2d 53, transfer of cases from criminal court to juvenile court. Finally, two Indiana Supreme Court cases have discussed the procedure which is required when a juvenile offender is sought to be waived over to adult court.

The landmark case of *Summers* v. *State, supra,* was the first to extensively consider proper waiver procedures. The court relied heavily on *Kent* v. *United States* (1966), 383 U.S. 541, and stated, at p. 559,

> "In *Kent, supra,* there is a lengthy discussion and criticism of juvenile proceedings in general. Suffice it to say that in a decision on the question of waiver such as presented here, the court held that the determination of whether a waiver and transfer of the juvenile to the criminal processes of the District Court was a 'critically important' proceeding. It was therefore declared that the scheme and purposes of juvenile proceedings were to be governed by non-criminal treatment 'and the adult criminal treatment (was an) exception which must be governed by the particular factors of individual cases.' The court there further stated that courts of appellate jurisdiction should conduct a 'meaningful review' of the waiver and transfer proceedings. Review should not be remitted to assumptions. In order to engage in a meaningful review this court must have a statement of the juvenile court's reasons which motivated the waiver including, of course, a statement of the relevant facts. We may not assume that there are adequate reasons, nor should we merely assume that 'full investigation has been made.' "

The court then quoted the *Kent* opinion in holding that

> " '. . . it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor.' We, as the reviewing court, hold that the statement while not necessarily including a conventional finding of facts, should be sufficient to demonstrate *unequivocally* that the strict statutory requirement of a full investigation and hearing has been met and that a conscientious determination of the question of waiver has been made. We require that the reasons for the order of waiver should be stated with sufficient specificity to permit a meaningful review." (Our emphasis.)

The Supreme Court then considered the waiver order then before it, and concluded that a *"pro forma"* printed order

which merely stated the statutory requirements was inadequate to permit meaningful review. The court, however, went beyond a strict reversal and established ". . . guidelines for the juvenile courts re waiver orders . . ."

". . . we should clearly and unequivocally state that the reasons for such waiver to a criminal court must be something more than the mere state of mind of the judge. *They must be a matter of record after a full hearing.* In this regard, we would say that an offense committed by a juvenile may be waived to a criminal court if the offense has specific prosecutive merit in the opinion of the prosecuting attorney; or if it is heinous or of an aggravated character, greater weight being given to offenses against the person than to offenses against property; or, even though less serious, if the offense is part of a repetitive pattern of juvenile offenses which would lead to a determination that said juvenile may be beyond rehabilitation under the regular statutory juvenile procedures; or where it is found to be in the best interest of the public welfare and for the protection of the public security generally that said juvenile be required to stand trial as an adult offender. We do not necessarily limit the determinative factors to those stated above but we suggest them only as guidelines, any one of which might be determinative of the propriety for waiver in a given case. *Kent* v. *United States, supra.*" (Our emphasis.)

Five years later, in *Atkins et al.* v. *State* (1972), 259 Ind. 596, 290 N.E.2d 441, our Supreme Court clarified the standards established in *Summers.* The waiver order in *Atkins* stated: (1) that the accused was over fifteen (15) years of age; (2) that the offense would be a crime if committed by an adult; (3) that the matter had "specific prosecutive merit"; and (4) that available dispositions (given Atkins' age by the time of trial) would be unavailing.

The Supreme Court held that the waiver order was not clear enough to permit meaningful review. In so holding, the court stated that

"The first two findings are necessary, statutory conditions for waiver and are not at issue in this case. Burns Sec. 9-3214, *supra.* Number 3 is a finding that in the *prosecutor's*

opinion the case had 'specific prosecutive merit.' If that is intended to mean that the prosecutor has indicated his willingness to prosecute and his estimate that he can do so successfully, then it could well be a *necessary* requirement for waiver. However, those two factors could never by themselves be *sufficient* for a waiver order. The fact that the prosecutor thinks the case *can* be successfully prosecuted in criminal court does not mean that it *should* be so prosecuted and that is the central issue before the juvenile court on a waiver hearing. If the finding is intended to mean something else then it should be made known by the juvenile court. The point here is that the juvenile court finding number 3 is a conclusion of unknown meaning and thus does not permit an intelligent review by this Court required by *Summers supra*.

"This is also true of number 4.

\* \* \*

Under *Summers,* waiver order is to be such that this Court in reviewing the order is not to be 'remitted to assumptions' concerning the reasons for the order. That is precisely what we are doing in this case—assuming what were the juvenile court reasons for the waiver.

"Even if we were to depart from the *Summers* case and *assume* the waiver order rests on one of the above reasons then the order is invalid because there is absolutely no evidence in the record to support waiver in this case on either of the two theories.

"There is no reason offered by the juvenile court or the appellee for a conclusion that the other dispositions available to a juvenile court are worthless without the ultimate threat of commitment to the Boys School." (Orginal emphasis.)

The necessity for providing a complete record was recently commented upon by this court in *Ingram* v. *State* (1974), 160 Ind. App. 188, 310 N.E.2d 903. In holding that an investigation prior to the filing of a delinquency petition must involve an investigation of home environment and prior record, the court also found it necessary to mention the waiver proceedings.

"We deem it necessary to mention another issue raised by Ingram. He was only ten days away from his eighteenth birthday at the time of the occurrence of the incident here involved. The trial court's waiver order suggests that the

unavailability of the sanction of commitment to Boys School because of Ingram's age may have been the prime factor in its decision to waive jurisdiction to criminal court. The recent decision of our Supreme Court in *Atkins* v. *State* (1972), [259] Ind. [596], 290 N.E.2d 441, emphasized that other dispositions are available to a juvenile court, and *if the juvenile court concludes such dispositions are without value it must specify the reasons for that conclusion. Those reasons must be supported by the record of either the preliminary hearing or the waiver hearing.* (Citations omitted.)" (Our emphasis.)

Finally, we take note of one further case which helps clarify the guidelines set down in *Summers*. In *State* v. *Jump* (1974), 160 Ind. App. 1, 309 N.E.2d 148, this court (Second District) relied on *Atkins* v. *State, supra,* for the proposition that waiver to criminal court, as the exception, must be "explicitly justified in the waiver order." 309 N.E.2d at 149. The court then stated that

"The State relies upon *Summers* v. *State* (1967), 248 Ind. 551, 230 N.E.2d 320 as supportive of its position that the Juvenile Court *must* waive jurisdiction if the offense is heinous or of an aggravated character. The language from *Summers* which refers to the gravity of the offense, however, is clearly and wholly permissive and was set forth with other alternative factors 'which *might* be determinative of the propriety for waiver in a *given* case.' (Emphasis supplied) 248 Ind. at 561, 230 N.E.2d at 326.

"Quite certainly, it may not be said that retention of jurisdiction by the Juvenile Court is erroneous merely because the offenses allegedly committed by the juvenile are 'serious' offenses. We thus reject the contention advanced by the State. To adopt it would be to require *all* juveniles to be waived to the criminal court for trial upon serious charges without regard to the purpose of the juvenile law concerning treatment and rehabilitation, as expressed in *Atkins* v. *State, supra.*" (Original emphasis.)

The above cases make it abundantly clear that waiver orders, as one of the most crucial functions of a juvenile court, must be adequately supported by reason and fact. Conclusory statements or mere recitation of statutory requirements, without further explanation, will

not suffice. This court, when reviewing juvenile proceedings, should be able to determine from the face of the waiver order whether sufficient evidence or reason existed for the granting of the waiver to adult court. Should this not be the case, however, we should have available the record of the waiver hearing. Of course, in cases such as the present one, where the *original* jurisdiction of the juvenile court is challenged, the record should contain all orders and rulings by the court, as well as the evidence in support thereof. Given the statement of purpose in the statute, and the strong language of the courts of this state, we must be prepared to conduct a full and proper review of juvenile proceedings when required to do so. The fundamental tools of this office are the appellate briefs and the record. Where one, or both, is inadequate, the result is often delay or a decision upon procedural grounds; neither outcome is desirable. *Lipps* v. *State* (1970), 254 Ind. 141, 258 N.E.2d 622.

Guided by the above authority, we must now consider Seay's argument that his motion to dismiss should have been granted because the Circuit Court did not properly acquire jurisdiction.

## II.

The course of proceedings which eventually culminated with Seay's trial in adult court was, at best, protracted and involved.

First, the record discloses no juvenile proceedings which would have vested the juvenile court with proper jurisdiction prior to the filing of indictment number 1530. Without such evidence, we cannot assume that proper proceedings took place, or that such proceedings were properly conducted. The Supreme Court of Indiana has made it clear that

". . . The juvenile court had original exclusive jurisdiction over these appellants, IC 1971, 33-12-2-3, being Burns Sec. 9-3103, and they could not be proceeded against in the first instance by criminal indictment or affidavit. *State ex rel.*

*Atkins* v. *Juvenile Court of Marion County* (1969), 252 Ind. 237, 247 N.E.2d 53. Only the juvenile court could, after hearing, relinquish jurisdiction over appellants." *Atkins* v. *State, supra,* 290 N.E.2d at 442.

Thus, if there was no waiver of properly acquired juvenile jurisdiction, the grand jury could not hand down an indictment against Seay if it was known that he was under eighteen (18) years of age. As our Supreme Court stated in *State ex rel. Atkins* v. *Marion County Juvenile Court, supra,* at 252 Ind. 243,

". . . a prosecutor cannot seek, nor the grand jury return, an indictment, nor may the prosecutor file an affidavit in a court of criminal jurisdiction against any person *known* to be under eighteen years of age unless the case is within the statutory exceptions. *Such an indictment or affidavit is a nullity and gives the criminal court no jurisdiction of the persons named therein or of the cause.* In this case the Marion County Criminal Court lacked jurisdiction even to transfer this cause to the respondent (juvenile court) and the respondent did not obtain jurisdiction to act in any manner with regard to such an indictment." (Our emphasis.)

The statutes have provided for the case where an indictment or affidavit is returned when the age of the accused is not known. *See,* IC 1971, 31-5-7-7 (Burns Code Ed.) and 31-5-7-13 (Burns Code Ed., Supp. 1975). However, in the case at bar, we have no indication that the "remand" by the Circuit Court was pursuant to the above transfer statutes. Indeed the above language of the trial court can only be construed as an order based on a lack of jurisdiction.

We are thus faced with a record that discloses (1) no juvenile jurisdiction with regard to juvenile petition No. 232, (2) no proper waiver of said cause, (3) an indictment filed in Circuit Court although Seay was under eighteen (18), and (4) a remand by the Circuit Court which directs the Juvenile Court as to further action against Seay.

From the above, we must conclude that neither the Juvenile nor Circuit Courts acquired valid jurisdiction over Seay or the subject matter of his cause. The Juvenile Court, being without power, could not waive Seay to adult court. The Circuit Court could not proceed without a valid transfer of jurisdiction from Juvenile Court, and the indictment filed against Seay was without force or effect. Therefore, the Circuit Court did not have the power to remand the cause to Juvenile Court with instructions. In short, the State cannot look to juvenile petition No. 232 or indictment No. 1530 as a basis for jurisdiction; any proper jurisdiction over Seay must be shown to exist independently of the above charges.

We note that the Circuit Court eventually dismissed the indictment against Seay. While this was the proper action for the trial court, it was without jurisdiction when the order was given, and it could have no real effect on the subsequent litigation or this appeal.

### III.

Seay's argument that his motion to dismiss information No. 1595 was improperly denied is in large part based on the invalidity of the Circuit Court's remand of the earlier indictment. It is Seay's contention that the remand of the earlier cause was the only basis for the *later* juvenile petitions and information. We have found that the remand did not vest, or revest, the Juvenile Court with jurisdiction. However, we must now consider the Juvenile Court bases for jurisdiction over Seay with regard to juvenile petitions No. 317 and 356, which were the immediate basis for information No. 1595.

We would agree that any action taken by either the Juvenile or Circuit Court based upon petition No. 232 or the trial court's remand would be invalid. However, Seay seems to equate custody with jurisdiction. Admittedly, Seay was in custody on petition No. 232 when the later petitions were filed. How-

ever, we find that the Juvenile Court's action on the later petitions did not draw support from the prior proceedings.

In passing on a challenge to juvenile jurisdiction this court considers the following to be essential documents: (1) the petition praying Seay be found delinquent, (2) the record of the pre-petition investigation, (3) the order of the Juvenile Court directing the probation officer to file a delinquency petition, (4) the delinquency petition, (5) the request or petition for waiver, (6) the record of the waiver hearing, (7) the findings of the Juvenile Court regarding waiver, and (8) the waiver order.

In an attempt to facilitate a complete review of this matter, this court has, *sua sponte,* issued two writs of certiorari, pursuant to Indiana Rules of Procedure, Appellate Rule 15(c). This procedure has resulted in substantial delay, but we found it necessary in light of Seay's arguments and the state of the record.

Initially, we find no requests or petitions denominated as such which pray that Seay be found delinquent. In cases, such as the present, where there is no transfer from adult court, such a petition is absolutely necessary. IC 1971, 31-5-7-7 (Burns Code Ed.) states that transfer and petition are *the* means of bringing parties before the court ". . . and no other."

After a perusal of the record, however, we find that a pre-petition hearing with regard to juvenile cause No. 356 was held *pursuant* to a referral from the Vanderburgh County Sheriff's Department. The transcript of the hearing indicates that evidence concerning Seay's prior juvenile record, home situation, and schooling was presented. This type of evidence is precisely what the statute requires, and we find that the order directing the probation officer to file a delinquency petition was properly entered. We wish to point out that the above order, while properly filed, does not set out the reasons why juvenile jurisdiction should be acquired. The order merely states that a hearing was held,

and then notes the *type* of evidence which was considered. It is only by reference to the transcript that we have been able to determine *what* facts were adduced at the hearing. We submit that our review of juvenile proceedings would be greatly aided if the court order would contain a brief statement of the facts which are found to support the conclusions of the juvenile referee or judge.

Our next concern is that we find no request for a prepetition hearing *or* a transcript of such a hearing with regard to juvenile cause No. 317.

In light of the explicit language of the statute that "no other" means than petition or transfer may vest the Juvenile Court with jurisdiction, we must conclude that proceedings regarding cause No. 317 were not properly instituted. As this case graphically illustrates, the beginning of juvenile proceedings may be but the first of a number of steps in the criminal process. In actions involving waiver from juvenile court each step is dependent upon the one before it, and we cannot assume that an initial, essential step was properly taken. We therefore hold that all proceedings which were taken with regard to cause No. 317 were void, as they were conducted without the proper assumption of jurisdiction by the Juvenile Court. *A fortiori,* it must follow that there could be no waiver of jurisdiction to Circuit Court. Thus, as waiver was the only way the adult court could have acquired jurisdiction in this case we hold that it was error for the Circuit Court to deny Seay's motion to dismiss insofar as it relates to Count II of information No. 1595.

As part of our review of this cause, we have also considered the waiver proceedings conducted in relation to cause No. 356. The waiver order consists of findings by the juvenile referee that Seay is over fifteen years of age; that the offense has "prosecutive merit"; that the offense is "aggravated"; that juvenile resources have been exhausted; and that it was in the best interests of "public welfare" that Seay be waived.

These "findings" are adopted by the juvenile judge without further comment.

It is our conclusion that the waiver order in this case does not meet the express requirements established in *Summers, Atkins, Jump* and *Ingram*.

The findings are nothing more than conclusory statements and a recitation of statutory requirements for waiver. We are presented with no facts in the order which establish why the prosecutor feels the offense has "prosecutive merit"; no facts which support the conclusions that juvenile resources are exhausted, or that "public interest" requires waiver. The cases cited above state that waiver must be "explicitly justified", and that the requirement of a full hearing be "demonstrate(d) unequivocally." Further, we take specific note that the fact that an offense is serious or "aggravated" is not alone sufficient to support a waiver to adult court. *See, State* v. *Jump, supra.*

Without facts in the waiver order, or a record of the waiver hearing to supplement the order, we are left to guess at the reasons for the waiver. While we may assume certain facts were considered, the above cases mandate that a meaningful review of juvenile proceedings be conducted with reference to fact and not assumption.

We add that we are well aware of the prior decision of this court (Third District) in *Clemons* v. *State* (1974), 162 Ind. App. 50, 317 N.E.2d 859, 867, wherein it was held that the evidence was sufficient to justify waiver. However, that case involved precisely what we do not have before us now: more complete, self-sufficient orders, and a record in support thereof.

For the reasons set forth above, we are constrained to hold that Seay's conviction for the assault upon Donald Hamilton, Count I of the information, must be reversed. A proper waiver was the only way the Circuit Court could have acquired jurisdiction over Seay. Lacking a valid transfer of juvenile ju-

risdiction,. the court was without power to try and convict Seay.

For the reasons set forth above the Vanderburgh Circuit Court is ordered to dismiss Count II of information 1595. Further, this cause is reversed and remanded for a redetermination of the waiver issue with regard to juvenile cause No. 356. Finally, we conclude that Seay should be committed to the custody of the juvenile authorities of Vanderburgh County and that proceedings in compliance with this opinion, and applicable statutes, should begin as soon as practicable following receipt of this decision.

ˑˑRobertson, C.J. and Lybrook, J., concur.

ˑNOTE.—Reported at 337 N.E.2d 489.

ON PETITION FOR REHEARING

LOWDERMILK, J.—The State's petition in this matter raises several issues for our consideration and we deem it necessary to briefly discuss one of the State's contentions.

The State argues that our original opinion, by requiring that a "request that Seay be found delinquent" be in the record, places a defendant such as Seay in double jeopardy. Specifically, the State contends that our opinion is contrary to the recent United States Supreme Court opinion in *Breed* v. *Jones* (1975), 421 U.S. 519, 95 S.Ct. 1779.

Initially, we feel that perhaps the problem is merely one of semantics. Our statement in the original opinion regarding a "request that Seay be found delinquent" is nothing more than a determination that juvenile jurisdiction be obtained and that a further investigation be made. Our language does not, and in light of applicable statutes cannot, direct a *finding* of delinquency at such a stage of juvenile proceedings. The request or petition and the attendant preliminary investigation are completely separate from a hearing on the merits of the charges. *See,* IC 1971, 31-5-7-7, 31-5-7-8, 31-5-7-15 (Burns Code Ed.).

In *Breed,* the Supreme Court stated that

". . . What concerns us here is the dilemma that the possibility of transfer after an adjudicatory hearing presents for a juvenile, a dilemma to which the Court of Appeals alluded." 95 S.Ct. at 1791.

"Respondent was subject to the burden of two trials for the same offense; he was twice put to the task of marshaling his resources against those of the State, twice subjected to the 'heavy personal strain' which such an experience represents. *United States* v. *Jorn,* 400 U.S., at 479, 91 S.Ct. at 554." 95 S.Ct. at 1787.

In the case at bar, Seay faced no such burden inasmuch as waiver from juvenile court was sought and granted *prior* to any findings in juvenile court on the merits of the delinquency petitions. In terms of *Breed,* there was no "adjudicatory" proceeding prior to waiver which would have presented the issue of double jeopardy once trial was begun in adult court.

Perhaps one further quotation from *Breed* will highlight the nature of the petition which we found necessary for juvenile jurisdiction.

The Supreme Court, at 95 S.C. 1785, characterized the proceeding which was challenged as one

". . . whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years. . . ."

Clearly, Seay was not subjected to a hearing in juvenile court to determine whether he had in fact committed certain alleged acts. The finding that certain acts would be crimes if committed by an adult should not be confused with a finding that such acts were actually committed by the accused.

Finally, to foreclose other questions which may arise with regard to the nature of the waiver hearing and double jeopardy we note the following statements from *Breed:*

". . . However, the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in

adult court. We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain and embarrassment of two such proceedings.[18]"

IC 1971, 31-5-7-14 (Burns Code Ed.) requires a "full investigation" before waiver. However, neither this section nor the cases cited in the original opinion state that the purpose of such an investigation is to decide whether the accused in fact committed the alleged acts. We find no violation of double jeopardy principles in the Indiana waiver statutes.

In conclusion, we hold that the pre-petition investigation and "petition that [Seay] the person be adjudged delinquent . . ." do not constitute a violation of double jeopardy, and do not amount to an "adjudicatory" hearing which is contrary to the opinion of the United States Supreme Court.

We deem it unnecessary to discuss any of the other issues raised by the State in its petition.

Petition denied.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 340 N.E.2d 369.

---

18. "We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. See *Collins* v. *Loisel*, 262 U.S. 426, 429, 43 S.Ct. 618, 625, 67 L.Ed. 1062 (1923); *Serfass* v. *United States*, 420 U.S. 377, 391-92, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975.). The instant case is not one in which the judicial determination was simply a finding of, *e.g.*, probable cause. Rather, it was an adjudication that respondent had violated a criminal statute." 95 S.Ct. at 1790.