MARTIN D. SWINEHART *v.* STATE OF INDIANA.

[No. 1-276A19. Filed June 23, 1976.]

*Charles D. O'Connor, Glass & Moberly,* of counsel, of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellee.

LYRBOOK, J.—Defendant-appellant Swinehart (Swinehart) appeals from a waiver from juvenile court to adult jurisdiction.

We affirm.

The facts most favorable to the appellee (State) in the instant case are that Swinehart and an adult were apprehended early in the morning of July 15, 1975, by officers of the Shelbyville Police Department who had responded to a radio report that two persons had been seen walking from an automobile parked in an alley toward an auction barn. At the time Swinehart was 17 years of age.

Swinehart and his companion were stopped while running around the auction barn away from a point where a patrol car had just appeared. A search of the grounds produced a can filled with gasoline and some rubber hose; it also revealed that the cap had been removed from the gas tank of a truck parked at the auction barn.

The gas gauge of the vehicle parked in the alley registered "empty." In the auto sat a female juvenile who reported that Swinehart and his companion had been in the car, had taken

something from its trunk, and had departed toward the auction barn.

Swinehart was charged with delinquency (theft)[1] in Shelby Superior Court, sitting as a juvenile court.

Swinehart had been sent to the Indiana Boys School three times; the first for being a runaway, the second after the juvenile court found that he had committed second degree burglary, and the third upon the action of his parole officer. One previous charge of theft had been dismissed by the juvenile court. Some minor incidents had been informally handled by the Shelby County juvenile authorities.

After a hearing on the State's petition to waive Swinehart from juvenile to adult jurisdiction the court entered the following findings and judgment:

"... The Court having heard the evidence and being advised finds there is probable cause to believe that an offense of theft has been committed and that the respondent child, Martin D. Swinehart, committed the offense or participated in its commission and that there is prosecutive merit to pursue the matter. The Court further finds that the offense the respondent is charged with is not a heinous offense or one of an aggravated character but that it is an offense which is part of a repetitive pattern of juvenile offense, the same being truancy, runaway, curfew, theft, burglary, second degree burglary, parole violation together with three commitments to the Indiana Boys School and the Court determines that the respondent may be beyond rehabilitation under the regular Statutory juvenile procedures and the Court further taking judicial knowledge of other suitable agencies of institutions for juveniles in the State of Indiana, now finds that they are not an alternative to a waiver to the criminal Court. Further, the Court finds that it would be in the best interest of the public welfare for the protection of the public security, generally, that the respondent child be required to stand trial as an adult offender. The court further finds that the respondent child was born October 2, 1957, and is under 18 years of age to-wit: 17 years of age. It is ordered by the Court that this cause be transferred by the Clerk from the Juvenile Docket of the Shelby

---

1. IC 1971, 35-17-5-3 (Burns Code Ed.).

Superior Court to the Criminal Docket of the Shelby Superior Court for further proceedings. . . .".

The issues presented in this case are:

(1) Whether the court retroactively applied IC 1971, 31-5-7-14(a) (Burns Code Ed. Supp. 1975) pertaining to waiver of juvenile jurisdiction.

(2) Whether the court properly took judicial notice that other suitable juvenile agencies or institutions within the state were not an alternative to waiver in the case at bar.

(3) Whether there was sufficient evidence to support the court's findings and judgment.

## I.

Swinehart focuses on the above findings and judgment as the basis for his contention that the court applied juvenile waiver standards which did not come into effect until after the alleged theft. Swinehart bases his argument on a comparison of the court's entry and IC 1971, 31-5-7-14(a), *supra,* which provides:

"If a child fourteen . . . years of age or older is charged with an offense which would amount to a crime if committed by an adult, the judge, upon motion by the prosecuting attorney and after full investigation, and hearing may waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult, if the court finds that the offense has specific prosecutive merit and either:

(1) it is heinous or of an aggravated character, greater weight being given to offenses against the person than to offenses against property;

(2) even though less serious, if the offense is part of a repetitive pattern of juvenile offenses which would lead to a determination that the juvenile may be beyond rehabilitation under regular statutory juvenile procedures; or

(3) it is in the best interest of the public welfare and for the protection of the public security generally that the juvenile be required to stand trial as an adult offender."

If the court applied the above statute in this case, the application would have been retroactive. The alleged offense

occurred on July 15, 1975,[2] whereas the above statute became effective on July 29, 1975.

Such an application would have been in error in that it would have been contrary to the "well-established rule that absent a contrary legislative intent statutes should be given prospective effect only." *State* v. *Smith* (1973), 260 Ind. 555, 559, 297 N.E.2d 809.

However, an examination of the Indiana case law pertaining to waiver of juvenile jurisdiction as recently surveyed by Judge Garrard in *Imel* v. *State* (1976), 168 Ind. App. 384, 342 N.E.2d 897 reveals that the case law applicable at the time of the alleged theft was identical to the statute which Swinehart claims was retroactively applied. Judge Garrard explains, at 342 N.E.2d 899:

"In *Kent* v. *U.S.* (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d.84, the United States Supreme Court held that such waiver proceedings were 'critically important' in terms of the due process guarantees of the Fourteenth Amendment. Accordingly, the Court held that the requirements of procedural due process mandate that in juvenile waiver proceedings, the juvenile is entitled to access to the social records and probation or similar reports which presumably are considered by the court; that he is entitled to a hearing; and that he is entitled to have the court state its reasons for its decision to the extent necessary to permit a meaningful review of the decision.

"Shortly thereafter, our Supreme Court interpreted our statute and the requirements of *Kent* in *Summers* v. *State* (1967), 248 Ind. 551, 230 N.E.2d 320. In *Summers* the Court indicated that although it was not limiting the factors that might justify waiver, as a guideline, waiver might be appropriate where it was determined after hearing that (a) the offense 'has specific prosecutive merit in the opinion of the prosecuting attorney;' or (b) 'it is heinous or of an

---

2. The juvenile waiver statute in effect on July 15, 1975, provided: "If a child fifteen . . . years of age or older is charged with an offense which would amount to a crime if committed by an adult, the judge, after full investigation, may waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such court may exercise the powers conferred upon the juvenile court in this act . . . in conducting and disposing of such case . . ."

aggravated character, greater weight being given to offenses against the person;' or (c) even if less serious, it is 'part of a repetitive pattern of juvenile offenses which would lead to a determination that said juvenile may be beyond rehabilitation under the regular statutory juvenile procedures;' or (d) where it is found to be in the best interest of the public welfare and for the protection of the public security generally that he be required to stand trial as an adult.

"Subsequently in *Atkins* v. *State* (1972), 259 Ind. 596, 290 N.E.2d 441, the Court held that the prosecutor's opinion, standing alone, that the offense, if waived to criminal court, would have prosecutive merit would not justify waiver."

Since Swinehart fails to identify anything in the record which indicates that the court derived the law it applied in this case from the statute rather than from the case law, his challenge to the law applied establishes no error.

The same result would have obtained in this case whether the court looked to the statute or to the identical case law. Since we are convinced that the proper result was reached even if it could be shown that the court applied the statute, we would ignore such error as harmless. *Honey Creek Corporation* v. *WNC Development Co.* (1975), 165 Ind. App. 141, 331 N.E.2d 452.

## II.

Swinehart next charges the court with error for taking judicial notice "of other suitable agencies or institutions for juveniles in the State of Indiana" and finding "that they are not an alternative to a waiver to the criminal court."

We recently disposed of a similar argument in *Imel, supra,* where we stated that direct evidence showing that the juvenile court had exhausted the resources available to it is not necessary in a juvenile waiver proceeding because the court judicially knows its resources.

We therefore conclude that the court committed no error by taking judicial notice of the suitable juvenile agencies or institutions in Indiana.

## III.

Swinehart finally contends that there was not sufficient evidence to support the court's findings and judgment.

Swinehart relies on *Atkins, supra,* which states, at 259 Ind. 600, 601:

"There is no reason offered by the juvenile court or the appellee for a conclusion that the other dispositions available to a juvenile court are worthless without the ultimate threat of commitment to the Boys School.

\* \* \*

"Several . . . possible dispositions would appear to be sufficiently grave to take the place of commitment to the Boys School as an ultimate threat, . . ."

While the *Atkins* court's waiver of juvenile jurisdiction over first offenders accused of disorderly conduct may have been in error, the court in the case at bar expressly based its decision on evidence that Swinehart had a history of offenses against property and that the "ultimate threat" of the juvenile system—Boys School—had been leveled against Swinehart three times to no avail.

Swinehart next seeks refuge in our statement in *Seay* v. *State* (1975), 167 Ind. App. 22, 337 N.E.2d 489, 496, 499:

". . . [W]aiver orders, as one of the most crucial functions of a juvenile court, must be adequately supported by reason and fact. Conclusory statements or mere recitation of statutory requirements, without further explanation, will not suffice. This court, when reviewing juvenile proceedings, should be able to determine from the face of the waiver order whether sufficient evidence or reason existed for the granting of the waiver to adult court. Should this not be the case, however, we should have available the record of the waiver hearing:

\* \* \*

"We add that we are well aware of the prior decision of this court (Third District) in *Clemons* v. *State* (1974), [162] Ind. App. [50], 317 N.E.2d 859, 867, wherein it was held that the evidence was sufficient to justify waiver. However, that case involved precisely what we do not have before us now: more complete, self-sufficient orders, and a record in support thereof."

However, the instant case does not suffer from the deficiencies we encountered in *Seay*. The entry by the court states on its face sufficient evidence for the waiver of Swinehart from juvenile to adult jurisdiction. There is a record to support the entry.

Swinehart lastly cites *Clemons, supra,* 317 N.E.2d at 862, 863:

> "As the Supreme Court of Wisconsin stated in *In re F.R.W., supra,* 212 N.W.2d at 139, citing *Miller* v. *Quatsoe* (E.D. Wis. 1971), 332 F.Supp. 1269, 1275:
>
>> " 'Unlike a typical criminal action, a juvenile waiver proceeding vests the judge with a wide amount of discretion in making his determination. In his decision making, the juvenile judge does not simply deal with a specific factual incident in the accused's life as does a criminal court judge, but rather the juvenile judge must consider the juvenile's past, his future, his mind, and his acts and then balance these factors against the safety, needs and demands of society. . . .' "

However, Judge Staton quoted the above passage to refute a constitutional vagueness attack on the juvenile waiver statute. In the portion of the *Clemons* opinion that dealt with the issue we face—sufficiency of the evidence—Judge Staton held, at 868:

> "The reasons for waiver stated by the juvenile judge and the record in support thereof adequately demonstrate that rehabilitation within the juvenile justice system had been unsuccessful. There is sufficient evidence to support the trial court's waiver judgment."

The court's entry and the record contain ample evidence demonstrating prosecutive merit, a repetitive pattern of offenses against property, the failure of the juvenile justice system to rehabilitate Swinehart, and public interest in the waiver of Swinehart.

We therefore affirm the court's finding and judgment in waiving Swinehart from juvenile to adult jurisdiction.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 349 N.E.2d 224.