Kevin MURPHY, Petitioner-Appellant,

v.

STATE of Indiana, Respondent-Appellee.

No. 2–580A150.

Court of Appeals of Indiana,
First District.

Aug. 26, 1980.

---

J. Richard Kiefer, Indianapolis, for petitioner-appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for respondent-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

This is an appeal by appellant Kevin Murphy (Defendant) from the Marion Superior Court, Criminal Division, Room I, upon a denial of a petition filed by Defendant under Ind. Rules of Procedure, Post-Conviction Rule 1.

We affirm.

## STATEMENT OF THE FACTS

Defendant, age 15, and two accomplices were charged with the October 6, 1974 robbery of a drugstore in Indianapolis. A document denominated as an "Information of Delinquent Child" was signed on October 10, 1974. A preliminary hearing was held by the Marion County Juvenile Court on October 22, 1974, and Defendant appeared at the hearing with his attorney and parents. At that time Defendant was in jail. At the conclusion of the hearing, the court ordered the probation officer to file a juvenile petition.

The Marion County Office of Prosecuting Attorney thereafter filed its petition to waive juvenile jurisdiction. The waiver hearing was held on December 5 and 6, 1974. Evidence at that hearing disclosed three separate robberies committed by Defendant and his two accomplices on October 6, 1974. The offenses were accompanied by brutal treatment of the victims, such treatment consisting of rape, sexual abuse, assault, and shooting at one victim. Juvenile records recited two prior admitted theft charges against Defendant resulting in findings of delinquency for which no incarcerations resulted. Juvenile jurisdiction was waived, resulting in a trial and conviction of the drugstore robbery. Defendant received a sentence of 10–25 years imprisonment.

A direct appeal was taken on the single issue of whether jeopardy attached at the waiver hearing. This was determined ad-

versely to Defendant in *Murphy v. State,* (1977) Ind.App., 364 N.E.2d 770.

In the case at bar, the State has argued that the direct appeal effected a waiver of the issues raised in this P.C.R. 1 proceeding. This argument finds support in *Henderson v. State,* (1979) Ind., 395 N.E.2d 224; *Eliacin v. State,* (1978) Ind., 380 N.E.2d 548; *Frasier v. State,* (1977) 267 Ind. 24, 366 N.E.2d 1166; *Layton v. State,* (1974) 261 Ind. 567, 307 N.E.2d 477; *Langley; Richardson v. State,* (1971) 256 Ind. 199, 267 N.E.2d 538; *Rivera v. State,* (1979) Ind. App., 385 N.E.2d 455. We are further cognizant of *Harris v. State,* (1980) Ind.App., 398 N.E.2d 1346, which held that any error in failing to have a preliminary investigation hearing was waived unless first raised at the time of the alleged error. Nevertheless, because Defendant was a juvenile, we choose to treat this case on its merits pursuant to the reasoning of our Supreme Court in *Summers v. State,* (1967) 248 Ind. 551, 230 N.E.2d 320.

### ISSUES

Defendant has asserted certain errors in the juvenile proceedings which he claims vitiated the trial in criminal court. The issues for our review are:

I. Whether the criminal court lacked jurisdiction because the juvenile court failed to conduct a preliminary inquiry and thus did not acquire jurisdiction that it could waive to the criminal court.

II. Whether the criminal court lacked jurisdiction because there was insufficient evidence for the juvenile court to find that Murphy was beyond rehabilitation in the juvenile justice system.

III. Whether Murphy was denied due process of law in violation of the Fourteenth Amendment to the United States Constitution when he was waived to criminal court by the juvenile court without first being given a copy of the petition alleging delinquency.

*Issue I.*

■ Defendant claims that because the juvenile court failed to obtain a social history as required by Ind. Code 31–5–7–8 before the formal juvenile petition was filed,

no pre-petition preliminary hearing or inquiry ever took place. A preliminary inquiry is required to vest jurisdiction in the juvenile court. *Summers, supra.* In *Summers* there was no preliminary inquiry or hearing at all. In *Duty v. State,* (1976) Ind.App., 349 N.E.2d 729, the cause was reversed because no preliminary hearing was held *prior* to the filing of the petition. In *Ingram v. State,* (1974) 160 Ind.App. 188, 310 N.E.2d 903, the cause was reversed because the court, in its preliminary hearing, relied solely upon the affidavit of a state trooper. The court held that the trooper's affidavit was sufficient to show the offense and its surrounding circumstances, but insufficient to show the home and environmental situation and previous history.

In *Seay v. State,* (1975) 167 Ind.App. 22, 337 N.E.2d 489, 498, the court stated as follows:

"In passing on a challenge to juvenile jurisdiction this court considers the following to be essential documents: (1) the petition praying Seay be found delinquent, (2) the record of the pre-petition investigation, (3) the order of the Juvenile Court directing the probation officer to file a delinquency petition, (4) the delinquency petition, (5) the request or petition for waiver, (6) the record of the waiver hearing, (7) the finding of the Juvenile Court regarding waiver, and (8) the waiver order."

Ind. Code 31–5–7–8, the statute relative to institution of juvenile proceedings in effect both at the time of *Seay* and the proceedings at issue here, stated, in part:

"Any person may and any peace officer shall give to the court information in his possession that there is within the county or residing within the county, a dependent, neglected or delinquent child. Thereupon, the court shall, *as far as possible*, make preliminary inquiry to determine *whether the interest of the public or of the child* require that further action be taken. Whenever practicable such inquiry shall include a preliminary investigation of the home and environmental situation of the child, his previous history

and the circumstances of the condition alleged and if the court shall determine that formal . jurisdiction should be acquired, shall authorize a petition to be filed by the probation officer . . . ." (Emphasis added.)

The statute concerned neglected and dependent children as well as delinquent children. We view the statute, and the cases decided thereunder, to mean that a juvenile court could not take a child from his parents or home or arrest and incarcerate him without some minimal preliminary inquiry. The statutory use of the phrase "whenever practicable such inquiry shall include a preliminary investigation of the home and environmental situation . . . [and] his previous history" indicates that the statute did not contemplate a preliminary social history in all cases and did not indicate to what extent such a social history should be developed in any particular case. The whole juvenile act relative to delinquency concerned conduct of the juvenile that was either (1) harmful to the public, or (2) harmful to himself. Ind. Code 31–5–7–8 enjoined the court to make preliminary inquiry into the juvenile's conduct to determine whether it was harmful to the public or himself. The extent or direction of the investigation would necessarily vary with the circumstances peculiar to each case.

■ In this case the juvenile was already in jail. At the preliminary hearing, evidence was presented by numerous affidavits of three separate robberies committed in one day, October 6, 1974, one of which is the subject of the charge here. The robberies were accompanied by rape, assault, sexual abuse of various victims, and the firing of a weapon at one victim. In all, there were six charges. Under *Ingram, supra,* the sworn informations were sufficient to satisfy the requirement of inquiry into the offense and circumstances. The court here took judicial notice of its own records which disclosed two previous admitted theft charges. The conduct of Defendant indicated a very violent, dangerous, even sadistic personality. Such history of violence and recidivist criminal conduct is sufficient to satisfy the requirements of Ind. Code 31–5–7–8, and *Summers supra,* and its

progeny. Further social history as might be necessary and desirable in cases of delinquency arising out of sociological problems, cases dealing with runaways, truancy, illegal consumption, promiscuity and the like, would add nothing to the decisional process in a case such as this where the protection of the public from a very dangerous juvenile is the gist of the action. We hold that the court conducted sufficient preliminary inquiry.

*Issue II.*

Defendant argues that the jurisdiction of the juvenile court was improperly waived because there was sufficient evidence to establish that Murphy was beyond rehabilitation in the juvenile justice system.

■ The waiver provision in Ind. Code 31–5–7–14, as it stood at the time of the waiver in this case, did not define the circumstances under which the juvenile court could waive jurisdiction to criminal court. However, *Summers, supra,* did. That case said, in 248 Ind. at 561, 230 N.E.2d at 325, that a waiver was proper:

[I]f the offense has specific prosecutive merit in the opinion of the prosecuting attorney; or if it is heinous or of an aggravated character, greater weight being given to offenses against the person than to offenses against property, or, even though less serious, if the offense is part of a repetitive pattern of juvenile offenses which would lead to a determination that said juvenile may be beyond rehabilitation under the regular statutory juvenile procedures; or where it is found to be in the best interest of the public welfare and for the protection of the public security generally that said juvenile be required to stand trial as an adult offender."

We have reviewed the evidence adduced in the waiver hearing as shown in the statement of facts, and the findings of the court in its waiver order, and we find that the evidence is more than adequate to satisfy the requirements of *Summers, supra.*

*Issue III.*

■ Finally, Defendant argues that neither he, his parents, nor his attorney was

given a copy of the petition filed in juvenile court, and therefore, the waiver proceedings were void and the criminal court had no jurisdiction. The pre-petition juvenile hearing discloses that the court read the pre-petition information to Defendant, his parents, and his attorney. The court offered the attorney a copy and read the formal petition to Defendant, his parents, and his attorney at the beginning of the waiver hearing. Defendant told the court at the waiver hearing that he understood the petition. The court inquired of Defendant's counsel if she was ready and she said she was, making no such objections as raised here. At the P.C.R. 1 hearing, Defendant's attorney said she was given a copy of the pre-petition information but not the formal juvenile petition. There was no evidence that the court refused her a copy or that she even asked the court for a copy. Counsel has some duty to obtain copies of pleadings from the court. Examination of the pre-petition information and the formal petition discloses that they are virtually identical, both charging the drugstore robbery. At the waiver hearing counsel cross-examined witnesses and called witnesses of her own. Counsel further testified that she had explained the charges to Defendant. A child, a parent, or a guardian is entitled to be notified in writing of the specific charges sufficiently in advance of the hearing to permit preparation, *State ex rel. McClintock v. Hamilton Circuit Court, New, Judge,* (1968) 249 Ind. 333, 232 N.E.2d 356, and this obviously was done. No prejudice has been demonstrated to us because of the asserted omission.

For the above stated reasons, the decision of the trial court is affirmed.

Affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.