RODMAN ATKINS ET AL. *v.* STATE OF INDIANA.

[No. 470S90. Filed December 21, 1972.
Rehearing denied February 5, 1973.]

*Michael B. Metzger,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from an order of the Juvenile Court of Marion County, Honorable Harold Fields,

presiding, waiving jurisdiction of appellants to the Marion County Criminal Court for trial. On February 27, 1969, a group of twenty-one Shortridge High School students, including the seven appellants, were suspended from school for three days for participating in certain peaceful but disruptive protests, the details of which are not particularly relevant to this appeal. After the suspension the appellants, in apparent protest, proceeded to the front of the school building and sat on the steps near the flagpole where they began to chant. Mr. Green, the vice-principal, asked them to leave and go home because they were disturbing the school and warned them that if they did not leave the matter would be turned over to the police. Police Inspector Klein addressed the students telling them that if they did not leave the premises promptly they would be subject to arrest. The students did not leave but instead they locked arms and continued to chant. The appellants were arrested and charged with disorderly conduct in violation of I.C. 1971, 35-27-2-1, being Burns § 10-1510. On October 20, 1969, the hearing on the prosecutor's petition for waiver of jurisdiction to criminal court was held and on November 8, 1969, the juvenile court entered the waiver order. Appellants contend that the order is invalid because it was not supported by sufficient evidence and was not set out with the required specificity.

The ultimate issue for the juvenile court at a waiver hearing is whether the juvenile should be waived to criminal court jurisdiction. The juvenile court has a choice—waive or retain the juvenile for disposition within the juvenile system. Indiana Code 1971, 31-5-7-14, being Burns § 9-3214. In the absence of statutory criteria, we derive the standards to be used in making this choice from the structure and purpose of the juvenile justice system itself. Schornhorst, "The Waiver of Juvenile Jurisdiction: Kent Revisited" (1968), 43 Ind. L. J. 583. The juvenile court had original exclusive jurisdiction over these appellants, I.C. 1971, 33-12-2-3, being Burns § 9-3103, and they could not be proceeded against in

the first instance by criminal indictment or affidavit. *State ex rel. Atkins* v. *Juvenile Court of Marion County* (1969), 252 Ind. 237, 247 N. E. 2d 53. Only the juvenile court could, after hearing, relinquish jurisdiction over appellants. Indiana Code 1971, 31-5-7-1, being Burns § 9-3201, states the overall purpose of the juvenile justice system as follows:

> "The purpose of this act is to secure for each child within its provisions such care, guidance and control, *preferably in his own home,* as will serve the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline *as nearly as possible equivalent to that which should have been given by his parents.*" (Emphasis added.)

This statutory context creates a presumption in favor of disposing of juvenile matters *within* the juvenile system and makes waiver to criminal court jurisdiction a last resort to be used only when the juvenile court after full hearing determines that the range of dispositions available within the juvenile system are not adequate in the particular case to serve "the child's welfare and the best interests of the state." Waiver to criminal court is then to be the exception and as such is to be explicitly justified in the waiver order. That is the central teaching of *Summers* v. *State* (1967), 248 Ind. 551, 230 N. E. 2d 320, where we said:

> "that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We, as the reviewing court, hold that the statement while not necessarily including a conventional finding of facts, should be sufficient to demonstrate unequivocally that the strict statutory requirement of a full investigation and hearing has been met and that a conscientious determination of the question of waiver has been made. We require that the reasons for the order of waiver should be stated with sufficient specificity to permit a meaningful review." 248 Ind. at 559-560.

The waiver order in this case reads in pertinent part:

"(Judge Harold N. Fields) CONDUCTED a full investigation of the matter and now finds:
1. The child is (was) over fifteen (15) years of age and under eighteen (18) years of age to wit: 17 years, at the time of the charged offense.
2. The offense charged would be a crime if committed by an adult, to wit: DISORDERLY CONDUCT.
3. The matter has specific prosecutive merit in the opinion of the Prosecutor if waived to a court of adult criminal jurisdiction.
4. That if the matter were to be retained in the juvenile jurisdiction and child adjudged to be delinquent, no disposition available to the Juvenile Court is reasonably calculated to effect rehabilitation in that: The case cannot be heard in Juvenile Court and disposition made until after the child has reached the age of eighteen (18) years, thus precluding commitment to a state institution."

We agree with appellants that the findings are not clear enough to permit meaningful review.

The first two findings are necessary, statutory conditions for waiver and are not at issue in this case. Burns § 9-3214, *supra.* Number 3 is a finding that in the *prosecutor's* opinion the case had "specific prosecutive merit." If that is intended to mean that the prosecutor has indicated his willingness to prosecute and his estimate that he can do so successfully, then it could well be a *necessary* requirement for waiver. However, those two factors could never by themselves be *sufficient* for a waiver order. The fact that the prosecutor thinks the case *can* be successfully prosecuted in criminal court does not mean that it *should* be so prosecuted and that is the central issue before the juvenile court on a waiver hearing. If the finding is intended to mean something else then it should be made known by the juvenile court. The point here is that the juvenile court finding number 3 is a conclusion of unknown meaning and thus does not permit an intelligent review by this Court required by *Summers, supra.*

This is also true of number 4. One minor point is that the juvenile court is in error in stating that appellants' being over eighteen years of age precludes him from committing them to "a state institution". The juvenile court is only precluded from committing persons over eighteen to the Boys School. Indiana Code 1971, 11-3-2-3, being Burns § 13-914a. Under I.C. 1971, 31-5-7-15, being Burns § 9-3215, he could still commit them to "any suitable public institution or agency, which shall include, but is not limited to, the state institutions for feeble minded, epileptic, insane." Apparently those were not considered appropriate institutions in this case. The more important question is why the unavailability of commitment to the Boys School *requires* that the appellants should not be handled at all within the juvenile system. There are at least two different reasons the juvenile court *could* offer: (1) Although the juvenile court had not yet made a determination as to what disposition the facts of this case demanded, since the ultimate sanction within the juvenile system was not available this alone rendered all the other possible dispositions useless leaving waiver to criminal court as the only alternative. (2) The juvenile court *had* determined that the facts of this case required these appellants be committed to the Boys School and since that disposition was unavailable, waiver to criminal court jurisdiction was the only alternative. Under *Summers,* waiver order is to be such that this Court in reviewing the order is not to be "remitted to assumptions" concerning the reasons for the order. That is precisely what we are doing in this case—assuming what were the juvenile court reasons for the waiver.

Even if we were to depart from the *Summers* case and *assume* the waiver order rests on one of the above reasons then the order is invalid because there is absolutely no evidence in the record to support waiver in this case on either of the two theories.

There is no reason offered by the juvenile court or the appellee for a conclusion that the other dispositions available

to a juvenile court are worthless without the ultimate threat of commitment to the Boys School. Burns § 9-3215, *supra,* provides several alternative dispositions:

"(1) Place the child on a probation or under supervision in his own home or in the custody of a relative or other fit person, upon such terms as the court may determine;

(2) Commit the child to any suitable public institution or agency, which shall include, but is not limited to, the state institutions for the feeble-minded, epileptic, insane, or any other hospital or institution for the mentally ill, or commit the child to a suitable private institution or agency incorporated or organized under the laws of the state, and authorized to care for children or to place them in suitable approved homes;

(3) The court may make such child a ward of the court, a ward of the department of public welfare of the county, or a ward of any licensed child placing agency in the state willing to receive such wardship;

(4) May take cause under advisement or postpone findings and judgment for a period not to exceed two years unless sooner requested by the party proceeded against in which event not to exceed ninety days;

(5) Make such further disposition as may be deemed to be to the best interests of the child, except as herein otherwise provided."

See also 1971 O.A.G. 14. In addition I.C. 1971, 31-5-7-24, being Burns § 9-3223, in reference to juvenile proceedings, provides:

"Any person who wilfully violates, neglects or refuses to obey or perform any order of the court may be proceeded against for contempt."

See also I.C. 1971, 33-12-3-7, being Burns § 9-3107, to the same effect. Several of these possible dispositions would appear to be sufficiently grave to take the place of commitment to the Boys School as an ultimate threat, *e.g.,* commitment to a *private* boys home for juveniles of which there are several in this State.

In addition the juvenile court position is refuted by con-

sidering the case of a juvenile accused of an act of delinquency *not* amounting to a crime if committed by an adult, which juvenile is seventeen years, eleven months when the act is committed and over eighteen when the juvenile court obtains jurisdiction. Commitment to the Boys School would be unavailable, as in this case, but that juvenile *cannot* be waived to criminal court. Would the juvenile court merely release the juvenile because the use of the lesser sanction would be futile. We think not. The court would use the tools available to it. The point is that this Court should not indulge a general assumption that the other dispositions available to a juvenile court are worthless in the absence of the ultimate threat of commitment to a state institution and there is nothing in this particular case to support such a conclusion.

The above cited statutory context, Burns § 9-3201, *supra*, in addition to creating a presumption in favor of disposing of juvenile matters within the juvenile system, also creates a presumption in favor of using the *least severe* disposition available to the juvenile court which will serve the needs of the case. Therefore commitment to the Boys School is to be resorted to only if the less severe dispositions are inadequate.

All seven of these appellants were duly enrolled in high school at the time of this incident. All seven appellants lived with at least one of their parents; three of them lived with mother and father; three lived with their mother and the father was deceased. All seven appellants voluntarily appeared with counsel at the initial hearing without summons and all but one appellant appeared with one or more of their parents. All the appellants had at least one parent who attended the waiver hearing and co-operated with the juvenile court by identifying their children for the record. Appellants are charged with a misdemeanor of disorderly conduct which was a completely non-violent demonstration against the school for felt grievances. The appellants Atkins, Holt, Lewis, Marshall and Yowell had no previous record of trouble leading

to involvement in the juvenile justice system. In the case of these five appellants there is no evidence that the less severe dispositions available within the juvenile system would be inadequate especially since the system had never been tried at all. Accordingly we hold the juvenile court erred in waiving these five appellants to the jurisdiction of the criminal court.

It appears that appellants Brown and Edmondson have a record of past juvenile offenses and therefore we remand those two appellants to the juvenile court for a redetermination of the waiver issue and to permit the juvenile court to weigh the significance of the prior offenses in light of the legal standards set forth in this opinion.

Hunter and Prentice, JJ., concur; Arterburn, C.J., dissents with opinion in which Givan, J., concurs.

### DISSENTING OPINION

ARTERBURN, C.J.—I am unable to agree with the reasoning expressed in the majority opinion.

On February 26, 1969, a large group of students, including appellants, gathered in the office of Mr. Merrill, Dean of Men, at Shortridge High School in the City of Indianapolis, to discuss the previous day's occurrence in the school cafeteria. They demanded the right to hold a meeting in the school auditorium during the 4th period. Mr. Lloyd Green, the vice-principal, told them that they could not use the auditorium at the time requested, but that it would be available for their proposed use at 3:15 p.m. that day. At the beginning of the 4th period, between 10:30 and 10:40 a.m., the group nevertheless went to the auditorium. The doors of the auditorium were open, but it was unlighted. The students went in and attempted to entice other students to join in the forbidden meeting. The students were told to return to their classes, but that there would be a meeting at 3:15 p.m. There is evidence in the record that Mr. Green was pushed and shoved while in the auditorium. At the beginning of the 5th period

the students went down the hall to the cafeteria singing "We will overcome." In the cafeteria they talked with other students for approximately ten minutes and then proceeded into the west corridor with a group of students. As they reached a point north of the library door they began to sing. At about 3:15 p.m. that same afternoon the appellants and a number of other students went to the auditorium and held the permitted meeting.

On February 27, 1969, the students again went to Mr. Merrill's office before 8:00 a.m. At that time, they were requested to proceed to their classes. During a performance of the Indianapolis Symphony Orchestra in the auditorium, the students stood up, proceeded to the nearest aisle, and walked out. They were accompanied out of the auditorium and into the cafeteria where they were told by three vice-principals that they were suspended from school for three days. The appellants then proceeded to the front of the school building and sat on the steps near the flag pole where they began a loud prolonged chant. Mr. Green asked them to leave and go home because they were disturbing the school and cautioned them that if they did not leave, the matter would be turned over to the police. There were several police officers present, and Inspector Klein addressed the appellants telling them that if they did not leave the premises promptly they would be subject to arrest. The students did not leave. Instead, they locked arms and continued to chant, whereupon they were arrested and charged with disorderly conduct. IC 1971, 25-27-2-1, *Burns' Ind. Stat. Ann.* § 10-1510 (1972 Supp.) provides:

> "Whoever shall act in a loud, boisterous or disorderly manner so as to disturb the peace and quiet of any neighborhood or family, by loud or unusual noise, or by tumultous or offensive behavior, threatening, traducing, quarreling, challenging to fight or fighting, shall be deemed guilty of disorderly conduct, and upon conviction, shall be fined in any sum not exceeding five hundred dollars [$500] to which

may be added imprisonment for not to exceed one hundred eighty [180] days."

This case is now here a second time. The appellants, Rodman Atkins, James R. Edmondson, Karen Lewis, Van Marshall, Darrick Holt, Derrick Yowell, and Jerome K. Brown, and 23 other students were indicted by the Marion County Grand Jury. The indictments were filed in Division I of Marion County Criminal Court and the judge transferred each case to juvenile court immediately. On March 5, 1969, the juvenile court noted the transfer and ordered a case filed against each defendant. On March 7, 1969, the prosecuting attorney of the 19th Judicial Circuit of Indiana, filed a petition for Waiver of Juvenile Jurisdiction in each case and the Court ordered a hearing on the petition for March 12, 1969. Each appellant then sought a Writ of Prohibition in this Court seeking to prohibit the Juvenile Court from acting on the ground that it had no jurisdiction. In that case, we granted the writ by a divided court. *State ex rel. Rodman Atkins* v. *Juvenile Court of Marion Co.* (1969), 252 Ind. 237, 247 N.E. 2d 53. It should be noted that our decision in *Atkins, supra,* was handed down on May 6, 1969. Judge Fields, who presided during the proceedings below, had dismissed each of the cases on April 5, 1969, agreeing with the contention that juvenile jurisdiction was imperfectly obtained.

On June 13, 1969, new petitions were filed in the Juvenile Court of Marion County against the appellants and others, and the Prosecuting Attorney immediately filed petitions for waiver of jurisdiction. On June 14, 1969, the hearing was continued after the appellants and their attorneys appeared, and appellants were ordered released to their parents. On July 2, summons were issued to the appellants and their parents to appear on July 17. On October 19, the cause was set for hearing on the petition for waiver. At that time, counsel for appellants and the State stipulated in open court

that the record as it stood from the proceedings of March 12, 1969 and thereafter would be the record in its entirety for the present hearing and proceedings. The stipulation was accepted by the Court and entered of record. The cause was reset for oral argument and the defendant-appellants were again released to the custody of their parents. On October 20, the hearing on petition for waiver of jurisdiction was held, and the proceedings of March 12, 1969, to March 19, 1969, which was the initial waiver hearing on the charges brought by indictment, were stipulated into the present record. The former hearing had lasted seven days during which time some 40 witnesses were called by the parties, and approximately 46 exhibits were offered. On November 8, 1969, the petition for waiver was granted by the Juvenile Court and an order to that effect was entered.

The Honorable Harold N. Fields, Judge of the Marion County Juvenile Court rendered the following Orders of Waiver of Jurisdiction, omitting purely formal parts (the Orders being identical as to each appellant except where noted otherwise) :

"(Judge Harold N. Fields) CONDUCTED a full investigation of the matter and now finds:

1. The child is (was) over fifteen (15) years of age and under eighteen (18) years of age to wit: *17* years, at the time of the charged offense.

2. The offense charged would be a crime if committed by an adult, to wit: DISORDERLY CONDUCT.

3. The matter has specific prosecutive merit in the opinion of the Prosecutor if waived to a court of adult criminal jurisdiction.

4. That if the matter were to be retained in the juvenile jurisdiction and child adjudged to be delinquent, no disposition available to the Juvenile Court is reasonably calculated to effect rehabilitation in that: The case cannot be heard in Juvenile Court and disposition made until after the child has reached the age of eighteen (18) years, thus precluding commitment to a state institution.

(Additionally as to appellants Brown and Edmondson)

The offense charged is part of a repetitive pattern of juvenile offenses, to wit:

(As to Jerome K. Brown)
11-21-65    O.A.P.A. Theft
11-18-68    Robbery (Waived to Criminal Court)
(As to James R. Edmondson)
5-31-65    ROBBERY

AND THE COURT: NOW ORDERS

1. That the Court waive jurisdiction and order said child held for trial under regular procedures of the Criminal Court of Marion County on a charge that —— (name) —— is hereby alleged to be a delinquent child in this to wit: On or about February 27, 1969, at and in the County of Marion, State of Indiana, did then and there unlawfully act in a loud, boisterous, and disorderly manner, so as to disturb the peace and quiet of a certain neighborhood, to wit: Shortridge High School, and 34th and Meridian Streets at Shortridge High School, by loud and unusual noise, then and there being contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Indiana.

2. That pending trial on said charge in the Criminal Court of Marion County, that said child be:
Released to his parents.
(or in the case of Jerome K. Brown)
Remanded to the custody of the Sheriff of Marion County with bond set in the amount of $500.00."

In the case at bar, it is clear that a full and adequate hearing was held on the question of waiver of jurisdiction, and that the trial judge did more than just recite his conclusions or state of mind in the waiver orders. Our concern in *Summers v. State* (1967), 248 Ind. 551, 230 N. E. 2d 320, was to insure that the waiver determination would be made on the basis of a full and adequate hearing. We did not mean to limit the trial judge's discretion except to the extent that a statement of reasons is required to permit a meaningful review. The requirements set out in *Summers* were followed by the trial judge here. The appellants were all very close to the age of

eighteen at the time of these proceedings. The offense for which they were charged would be a crime if committed by an adult, i.e. disorderly conduct. The trial judge found that the matter had specific prosecutive merit in the opinion of the prosecutor. In addition, the judge found that there was no disposition reasonably calculated to effect rehabilitation in these cases since the appellants were so close to the age of eighteen years, and by the time of trial they would be over eighteen years of age and not subject to commitment to any juvenile institution. He was obviously of the belief that the dispositions available to the Juvenile Court were not adequate in these cases. We see no justification for disturbing that judgment. We find nothing to indicate that Judge Fields abused his discretion or acted in an arbitrary manner with respect to these appellants. The waiver order contains ample reasons to support waiver of jurisdiction as to these appellants. Thus, the procedures used here are fully consistent with the guidelines we set out in *Summers, supra,* and the orders of waiver as to these appellants are not contrary to law.

The substance of the majority opinion requires a full-fledged hearing on a mere waiver of jurisdiction to the criminal court, in order to determine the possible punishments under each set of circumstances. If it is conceivably possible to use the remedies of the juvenile system, then the trial court has no right to waive to a criminal court. The trial court, however, must guess, since the majority suggests that the Supreme Court decides whether or not the remedies are adequate within the juvenile process. All of this comes prior to the trial of the meritorious issues, thus creating two full trials and a change of judge. I further point out that a juvenile proceeding is not supposed to be a criminal proceeding, although I realize that the United States Supreme Court, in the cases of *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 84, 86 S. Ct. 1045 and *Kent* v. *U.S.* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 96 S. Ct. 1045, has played havoc with our juvenile pro-

ceedings by imposing almost all the procedural requirements of the criminal process upon the juvenile system.

The majority speculates on situations in which juveniles are charged with conduct that does not constitute a crime for an adult. We do not have that situation here, since the so-called juveniles who now are more than 18 years of age are alleged to have committed a crime, although the majority opinion denominates their acts as "certain peaceful but disruptive protests" and "completely non-violent demonstrations against the school for felt grievances." As I read the record, disorderly conduct, when it takes the form of loud noises, running, blocking, singing and includes pushing and shoving, does violence to the rights of others who desire peace and quiet in order to pursue the legitimate goal of receiving an education. The crime for which the appellants are charged involves the infringement of important rights belonging to their fellow students by disrupting the educational processes at Shortridge High School. It is well settled that conduct which materially and substantially interferes with the operation of the public educational system may be prohibited even though expressive activity is involved. *Tinker* v. *Des Moines Independent Community School District* (1969), 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731. The appellants seek to assert rights under our Juvenile Code when, at the same time, they were unwilling to recognize and honor the rights of their classmates. We think the trial judge, considering their age, could reasonably refuse to treat such individuals as children under our statutes.

The appellants are all now over 18 years of age, and considering the slow progress that this case is making, having been before us twice and sent back for a rehearing, these appellants will be full grown men and women, still subject to the juvenile process as a result of the majority opinion. The purposes for which our juvenile system was created are lost in the jungle of court proceedings that the majority opinion

compels in this case. We must have discipline in schools if we are going to have any success in meeting our educational goals. Schools should have the power to enforce discipline. What this Court is doing here by not supporting the trial court and the school authorities results in nothing but chaos in the school systems. In my opinion, Judge Fields explicitly stated, and with good cause, the reason why the juvenile court should not retain jurisdiction for these 18-year-old appellants who have the right to vote and who should be tried as adults for their crime in a criminal court.

Givan, J., concurs.

NOTE.—Reported in 290 N. E. 2d 441.