ROCKY KEVIN IMEL *v.* STATE OF INDIANA.

[Nos. 3-974A155 and 3-1274A204. Filed March 10, 1976.]

---

1. All these cases found the error harmless except *N.Y.C. R.R. v. Knoll,* supra.

*John F. Lyons, James M. Prickett,* of Fort Wayne, for appellant.

*Arnold H. Duemling, Jack R. Notestine, Richard R. De-Camp,* of Fort Wayne, *Theodore L. Sendak,* Attorney General, for appellee.

GARRARD, J.—In case No. 3-974A155, Rockey Kevin Imel appeals from an order waiving juvenile jurisdiction and directing that he be subject to prosecution as an adult. Case No. 3-1274A204 is an appeal from a waiver of juvenile jurisdiction upon a different charge a short time later. Because of the common questions presented in both appeals, we consolidate them for purposes of this opinion.

Imel's various assignments of error may generally be grouped into the following categories:

A. It was not properly established that the offenses under consideration had prosecutive merit.

B. Aside from the question of prosecutive merit, it was not established that juvenile jurisdiction should be waived.

C. The waiver statute is unconstitutional.

Imel was born September 14, 1957. Prior to the fall of 1972, it appears that Imel's only contact with the authorities involved the possible theft of a motor vehicle, for which he was reprimanded and released.

On November 15, 1972, a juvenile petition was filed against Imel charging that he was a delinquent child. The specifications charged that on September 16, 1972, he had taken unauthorized control of an automobile under circumstances not amounting to theft; that on October 11, 1972, he had similarly taken another auto and had shot into it with a .22 caliber rifle; that on September 24, 1972, he had committed a first degree burglary; and on September 16, 1972, he had been wandering about the streets at 3:00 a.m. in violation of curfew laws. The court found him guilty of having committed an act of delinquency.

On December 14, 1972, another juvenile petition was filed, and Imel was again found to have taken unauthorized control of a vehicle under circumstances not amounting to theft. As a result, he was placed upon strict probation.

On October 22, 1973, a petition was filed alleging that Imel had violated the conditions of his probation in that he had committed the theft of an automobile in May 28, 1973. The record discloses no disposition of this petition.

On January 11, 1974, another petition alleging violation of probation was filed. This petition alleged theft of an automobile on November 2, 1973, commission of a first degree

burglary on December 7, 1973, and another theft on December 14, 1973.

This was followed by a third petition filed March 13, 1974. This petition alleged commission of a second degree burglary on December 23, 1973, an armed robbery on January 9, 1974, another armed robbery on January 15, 1974, a first degree burglary on January 18, an armed robbery on January 27, and an attempted robbery on January 27, 1974.

Also on March 13, 1974, the prosecuting attorney petitioned the court to waive juvenile jurisdiction and permit Imel to be prosecuted as an adult on all of the criminal charges referred to in the petitions of January 11 and March 13, 1974.

On March 20, 1974, the court conducted the waiver hearing which is the subject of Cause No. 3-974A155 and on March 22, 1974, waived jurisdiction on all of the charges alleged except the armed robbery charge of January 9 and the second degree burglary charge.

This waiver occurred prior to the 1975 amendments to IC 1971, 31-5-7-14, when the statute merely provided that if the child was fifteen years of age, or older, and committed an offense which would amount to a crime if committed by an adult, "after full investigation," the juvenile court might waive its jurisdiction and order the child held for trial as an adult.

In *Kent* v. *U.S.* (1966), 383 U.S. 541, the United States Supreme Court held that such waiver proceedings were "critically important" in terms of the due process guarantees of the Fourteenth Amendment. Accordingly, the Court held that the requirements of procedural due process mandate that in juvenile waiver proceedings, the juvenile is entitled to access to the social records and probation or similar reports which presumably are considered by the court; that he is entitled to a hearing; and that he is entitled to have the court state its reasons for

its decision to the extent necessary to permit a meaningful review of the decision.

Shortly thereafter, our Supreme Court interpreted our statute and the requirements of *Kent* in *Summers* v. *State* (1967), 248 Ind. 551, 230 N.E.2d 320. In *Summers* the Court indicated that although it was not limiting the factors that might justify waiver, as a guideline, waiver might be appropriate where it was determined after hearing that (a) the offense "has specific prosecutive merit in the opinion of the prosecuting attorney;" or (b) "it is heinous or of an aggravated character, greater weight being given to offenses against the person;" or (c) even if less serious, it is "part of a repetitive pattern of juvenile offenses which would lead to a determination that said juvenile may be beyond rehabilitation under the regular statutory juvenile procedures;" or (d) where it is found to be in the best interest of the public welfare and for the protection of the public security generally that he be required to stand trial as an adult.

Subsequently in *Atkins* v. *State* (1972), 259 Ind. 596, 290 N.E.2d 441, the Court held that the prosecutor's opinion, standing alone, that the offense, if waived to criminal court, would have prosecutive merit would not justify waiver.

Furthermore, in *Jump* v. *State* (1974), 160 Ind. App. 1, 309 N.E.2d 148, the Second District pointed out that where the proper procedural requirements have been met, the decision itself of whether or not to waive juvenile jurisdiction remains within the sound discretion of the juvenile court judge.

In this context, we turn to consideration of the questions presented by Imel. There is no assertion here that the juvenile court failed to acquire jurisdiction,[1] that Imel was denied access to relevant records,[2] or that the requirements of a

1. *See, Ingram* v. *State* (1974), 160 Ind. App. 188, 310, N.E.2d 903.
2. *See, Sigmon* v. *Dohner* (1974), 159 Ind. App. 618, 308 N.E.2d 716.

fair hearing were not met.[3] Instead, Imel challenges the constitutionality of the waiver statute and questions the sufficiency of the evidence to support the determination to waive.

Imel's contentions that the waiver statute is void for vagueness, violative of due process, and an illegal delegation of powers were recently rejected by this court in *Clemons* v. *State* (1974), 162 Ind. App. 50, 317 N.E.2d 859, *trf. den., cert. den.*, and need not be reconsidered here.

We also reject Imel's contention that the statute violates the requirements of equal protection. Admittedly, most legislative classifications based upon age are arbitrary in the sense that no specific reason may be demonstrated for selecting the precise age that separates the class. How can one logically distinguish between the eighteen year old who qualifies to vote, and his seventeen year-three hundred fifty day old companion who does not? That, however, is not the controlling question.

The juvenile code reflects the doctrine of the state as *parens patriae*. It recognizes that among those committing antisocial acts are youthful persons, and that there is a presumption based upon human experience that there is likely to be a lack of mature discretion, discriminatory judgment and stability of character on the part of these offenders. It also recognizes the value of investing the court with sound discretion in its treatment of youthful offenders so that disposition of a case may be governed, at least in part, by the significant attending circumstances. In so doing, the legislature provided that although all juveniles as defined in the act were to be exclusively within the jurisdiction of the juvenile courts, in appropriate circumstances that court might waive its jurisdiction for older offenders. Such a distinction is reasonable. It is not rendered unreasonable by selection of age fifteen as the line of demarcation, for such an age appears to be reasonably

3. *See, Summers* v. *State* (1967), 248 Ind. 551, 230 N.E.2d 320.

related to the class established. Furthermore, the fact that the juvenile is tried as an adult does not mean that there are no choices available for his disposition if he is subsequently convicted. In a given case, the court may still have great latitude in making its disposition.

We now consider the waiver of juvenile jurisdiction over Imel. He first asserts that the standard of proof to be applied at waiver hearings must be the criminal standard of proof beyond a reasonable doubt. We disagree. In addition to the general civil nature of delinquency proceedings, it must be recalled that a waiver hearing is not an adjudicatory proceeding. *Clemons* v. *State, supra.* Thus, while *Atkins* recognizes the statutory presumption in favor of dealing with juveniles within the juvenile court system, the burden thereby imposed may be discharged by a preponderance of the evidence. *See, e.g., In re Murphy* (1972), 15 Md. App. 434, 291 A.2d 867.

Imel next attacks the court's finding that the charges against him have prosecutive merit. We believe the opinion of our Supreme Court in *Summers* v. *State* (1967), 248 Ind. 551, 230 N.E.2d 320, as modified and explained by the Court in *Atkins* v. *State* (1972), 259 Ind. 596, 290 N.E.2d 441, adequately explain the role of this finding. Where a request is made that the juvenile court waive jurisdiction, it is both proper and necessary that the court consider whether the matter sought to be waived to criminal court has prosecutive merit, for if it does not, there should be no wavier. On the other hand, if the court determines that the charges do have prosecutive merit, then it must reach the second question: whether it should waive or retain its juvenile jurisdiction.

The evidence presented at Imel's hearing was sufficient to sustain the finding that the charges which were waived had prosecutive merit. On the alleged robbery of Harold George and the attempted robbery of Robert Maier, the victims testified and identified Imel. On the robbery of Donald Smith, a person present during the robbery testified and

identified Imel. A police officer testified to Imel's confession of one burglary and an accomplice testified to his participation in the other. While the evidence regarding the theft charges was less conclusive, the occurrence of the thefts was established and there was sufficient circumstantial evidence of Imel's involvement to support the trial court's determination.

Finally, Imel contends there was insufficient evidence to support a waiver because no evidence was introduced to establish (a) that he could not be dealt with in a rehabilitative manner by the agencies available to the juvenile court; (b) that the juvenile court had exhausted the resources available to it; (c) that Imel had a past record of offenses sufficient to warrant waiver; or (d) that there was a repetitive pattern of crimes committed by Imel which would justify waiver.

The courts in *Kent, Summers* and *Atkins* found that due process requires the juvenile court to give a statement of its reasons in a waiver decision in order that appellate courts may conduct a meaningful review.

To amplify the meaning of this requirement, the courts have spoken of many of the relevant considerations. In *Kent* the court attached as an appendix to the decision a 1959 policy memorandum of the juvenile court of the District of Columbia which provided for consideration of the following factors: (1) the seriousness of the alleged offense to the community and whether protection of the community requires waiver; (2) whether the offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against persons or merely against property rights; (4) the prosecutive merit of the complaint; (5) desirability of disposing of the entire offense in one court where the juvenile's associates are adults who will be charged in criminal court; (6) the sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living; (7) the juvenile's record and previous history; (8) the prospects for adequate protection of the

The burden upon the state is to establish by a preponderance of the evidence that juvenile jurisdiction should be waived. How the state discharges that burden depends upon the facts involved. As pointed out in *Summers*, in some cases the aggravated nature of the offense charged might control, in others the repetitive nature of the juvenile's conduct might have overriding significance. In each case, however, the court is called upon to consider both the best interests of the child and those of society, and to the extent it finds these interests incompatible, it must resolve the conflict.

In the case before us, there was substantial evidence that Imel had engaged in numerous activities which would have been felonies if committed by an adult. Included were armed robberies committed at a time when he not only had been adjudged delinquent, but had pending separate petitions asserting violation of his probation. Although as Imel argues, direct, evidence was not introduced at the hearing to establish "that the juvenile court had exhausted the resources available to it," such evidence was not necessary. The judge of the court judicially knows the court's resources.

In addition, the testimony of a clinical psychologist who had examined Imel was presented. While he felt it possible to "reach" Imel, he stated that in his opinion it would be impossible to return Imel to his home and general environment without expecting him to continue to commit similar offenses. He also testified that Imel was of average intelligence, that "he did not take kindly" to suggestions to alter his behavior, and that in order to change Imel's attitude it would be necessary to deal with him over a long period of time and under sufficient restraint so that he could not voluntarily reject the efforts being made.

The evidence amply supports the court's findings that the charges upon which waiver was made had prosecutive merit; that some were of heinous nature and the remainder aggravated (by the total pattern of Imel's conduct) ; and that no

public and the likelihood of reasonable rehabilitation of the juvenile through use of the juvenile procedures then available to the court.

As previously noted, the court in *Summers* recognized as relevant: prosecutive merit, whether the offense was heinous or aggravated, whether it was part of a repetitive pattern; or whether public welfare and security required that the juvenile stand trial as an adult.

In *Atkins* the court held that in the absence of any findings determining that Boys School was the only potentially effective disposition, the mere fact that the juvenile was too old to be sent there would not justify waiver.

In *Clemons* we observed that in waiver proceedings the court must necessarily consider the nature of the offense, whether it is part of a repetitive pattern, whether the child is beyond rehabilitation under the juvenile system, and whether waiver is necessary to protect the public security.

All these factors appear relevant to the decision to be reached. However, it must be recalled that the statutory scheme requires a dual consideration by the court: the child's welfare *and* the best interests of the state. IC 1971, 35-5-7-1; *Atkins* v. *State, supra.*

While these considerations often coincide, they may also oppose each other. The balancing process that is inherent in weighing these considerations is the primary reason for granting the juvenile judge, who has the benefit of observing the juvenile and others involved, and their demeanor, sound discretion in reaching his determination. On appeal, our review is limited to considering whether an abuse of that discretion has been demonstrated. *Clemons* v. *State, supra.*

A review of the factors previously mentioned leads to the conclusion that once the court determines there is prosecutive merit in the offense alleged, its decision is to be guided by the totality of the circumstances shown to exist.

disposition available to the juvenile court was reasonably calculated to effect rehabilitation.

Accordingly, the waivers entered in Cause No. 3-974A155 are affirmed.

After the court entered the above waiver order and while Imel's motion to correct errors was pending, yet another petition was filed against him alleging acts which would constitute the crime of first degree burglary if committed by an adult. In this proceeding, the court was again presented with ample evidence that the charge had prosecutive merit. At the conclusion of the hearing the court entered its findings that the charge had prosecutive merit; that the crime charged "is a serious crime following a pattern of involvement in such crimes," and that there was no reasonable prospect of rehabilitation through use of the resources available to the juvenile court.

Essentially the same allegations of error are urged as those discussed in No. 3-974A155. We find our resolution of those questions controls the outcome in No. 3-1274A204 and that the waiver entered therein should be sustained.

Accordingly, the waivers entered in Causes No. 3-974A155 and No. 3-1274A204 are affirmed.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 342 N.E.2d 897.