## TERRY WAYNE WALKER *v.* STATE OF INDIANA.

[No. 575S133. Filed June 21, 1976.]

*John G. Bunner*, of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General, *Joseph J. Reiswerg*, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of first degree murder and sentenced to life imprisonment. His appeal assigns the following alleged errors:

(1) Admission of the decedent's utterance, made between the time that he was shot and the time that he died, as violative of the hearsay rule.

(2) Giving of the State's requested cautionary instruction concerning the issue of insanity.

(3) Admission into evidence of photographs of the decedent taken during the autopsy and showing surgical incisions.

(4) Admitting evidence concerning a telephone conversation as violative of the hearsay rule.

(5) Admission into evidence, over an objection of irrelevance, of photographs depicting numbers inscribed upon the underside of a desk or counter at the place of employment of the decedent's wife, an accessory before the fact.

(6) Admission into evidence, over an objection of irrelevance, of an airlines information booklet found among the defendant's belongings near the scene of the crime.

(7) Subjection to double jeopardy in that the Juvenile Court waiver hearing was an adjudication upon the merits.

The evidence disclosed that the defendant was hired by the decedent's wife, Joyce DeVillez, to kill him. The killing took place in Evansville, Indiana, on June 5, 1974. At the time, the defendant was seventeen years of age.

The defendant traveled to Evansville from Roseville, Michigan, by bus and stayed at the Jackson House Motel in Evansville. In these connections, he used the name "Eddie Pool." After arriving in Evansville, he contacted the decedent under the pretense of desiring to purchase his truck. The defendant told the decedent that his father was staying at the Jackson House, and that they would have to go there to get the necessary funds. After getting the certificate of title to the truck, the decedent, his son Kevin, and the defendant went to the Jackson House. Kevin stayed inside the truck, while the defendant and the decedent went around to the side of the Motel building.

Shortly thereafter, Kevin heard three shots. He stepped out onto the street and noticed a large crowd gathering at the side of the Motel building. At the center of this crowd, he found his mortally wounded father.

The defendant hid his gun and a suitcase in some bushes across the street from the Motel. He then returned to Michigan and was later arrested there.

## ISSUE I

The first police officer to arrive on the scene asked the decedent who shot him, and he responded, "A boy named Terry." The defendant contends that the statement was excludable hearsay evidence and not admissible under the *res gestae* exception, because the decedent had spoken to others in the crowd before making the statement in question.

That a statement was made in response to an inquiry is but one factor to be considered in determining whether the statement is admissible as an excited utterance. *Fort Wayne & Wabash Valley Traction Co.* v. *Roudebush*, (1909) 173 Ind. 57, 88 N.E. 676; *Byars* v. *Arizona Pub. Serv. Co.*, (1975) 24 Ariz. App. 420, 539 P.2d 534. Similarly, the fact that the response or statement is not the first sentence coming from the declarant's mouth does not preclude application of this exception to the hearsay rule. In either case, the issue is whether the speaker is still under the influence of the exciting event or has had time for reflective thought, considering the nature of the event and his concern with it. *Cf.* McCormick, Evidence § 297 (2d Ed. 1972).

Whether a statement is to be admitted as an excited utterance is a matter peculiarly within the discretion of the trial judge. *Kreuger* v. *Neumann*, (1959) 129 Ind. App. 300, 154 N.E.2d 741. In this case, two nurses who were among the first to arrive upon the scene and who attended the decedent testified that he was wounded seriously and appeared to be going into shock. There was no indication, however, that the decedent knew that death was near or certain or that he had given up hope of recovering; hence the statement was not admissible as a dying declaration. However, this

circumstance coupled with the near proximity in time to the shooting was indicative of spontaneity. Under these circumstances we see no error in the trial court's holding that the statement was admissible as an excited utterance.

## ISSUE II

The trial court gave the following instruction over the objection of the defendant that it was misleading and disparaging to the defense of insanity.

> "The Court instructs you that the question of insanity should be carefully considered by the jury because the due regard for the ends of justice and the welfare of society demand that a party guilty of a crime be convicted."

This instruction was based upon dicta from *Dipert* v. *State,* (1972) 259 Ind. 260, 286 N.E.2d 405, and was approved by the Court of Appeals in *Hamp* v. *State,* (1974) 157 Ind. App. 567, 301 N.E.2d 412. In *Huddleston* v. *State,* (1973) 260 Ind. 398, 295 N.E.2d 812, we reversed because of the identical instruction that occasioned reversal in *Dipert.* To a considerable extent, the *Dipert* dicta and the *Hamp* instruction, which are essentially the same as the instruction here challenged, are subject to the same criticism as the *Dipert* instruction. The difference is one of degree. Instructions generally should state propositions of law and those that do not but are mere statements for the philosophical guidance of the jury are rarely beneficial, frequently troublesome and best avoided. What we learned from reading the aforementioned cases is that an instruction should not disparage the defense. Standing alone, the effect of the challenged instruction would, in the opinion of the writer, be objectionable. However, when viewed along with the other instructions upon the defense of insanity,[1] we do not find it disparaging.

---

1. "Defendant's Instruction No. 2.
You are instructed that a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

## ISSUE III

The State's exhibit No. 4 was an autopsy photograph showing. It showed three circular wounds in the locations described by the pathologist and the nurses. (Sutures over the stomach were also visible.)

---

. . . the terms mental disease or defect do not include an abnormality manifested by repeated criminal or otherwise anti-social conduct."

"Defendant's Instruction No. 3.

You are instructed that the burden is upon the State of Indiana to prove beyond a reasonable doubt that the defendant was not of unsound mind at the time of the commission of the alleged offense. If from the evidence the State has failed to prove this fact to you beyond a reasonable doubt, or if there is in your minds a reasonable doubt as to whether the defendant was of unsound mind at the time of the alleged offense, then your verdict should be not guilty, by reason of unsoundness of mind."

"Defendant's Instruction No. 4.

I instruct you that without a criminal intent there is no crime under this indictment as charged, and without mental capacity for it there can be no criminal intent. The defendant's sanity or mental capacity to form the intent to commit a felony, is in issue under this indictment and is an essential element the State is bound to prove beyond a reasonable doubt, and not merely by a preponderance of the evidence. The evidence of defendant's sanity at the time of the commission of this offense need not predominate in weight over that going to show his sanity. And if there is a reasonable doubt in your mind of his sanity at the time of the commission of this offense, the law requires that you find him not guilty."

"Court's Instruction No. 2.

This is a prosecution by indictment by the State of Indiana against the defendant, Terry Wayne Walker, charging the defendant with the crime of Murder in the First Degree.

The indictment, omitting the formal parts, reads as follows: (here insert).

To this indictment, the defendant has been arraigned in open court and has entered his plea of Not Guilty, and also has entered his plea of unsoundness of mind at the time the offense charged in said indictment was committed, as follows: (here insert).

The State has filed its reply to defendant's plea of insanity as follows: (here insert).

Upon the issues thus joined, the burden is upon the State of Indiana to establish the material averments of the indictment and the sanity of the defendant, by the evidence to the exclusion of every reasonable doubt."

"Court's Instruction No. 19.

In considering the issue of insanity, you may consider the evidence that has been admitted as to the defendant's mental condition before and after the offense charged, as well as the evidence as to defendant's mental condition on that date. The evidence as to the defendant's mental condition before and after that date was admitted solely for the purpose of assisting you to determine the defendant's condition on the date of the alleged offense."

This photograph was illustrative of the witness' testimony and tended to prove the cause of death. The wounds relevant to the case were not obscured by the surgical incisions, as they were in *Warrenburg* v. *State,* (1973) 260 Ind. 572, 298 N.E.2d 434. The photograph was not unlike those in *Carroll* v. *State,* (1975) 263 Ind. 696, 338 N.E.2d 264 and *Birkla* v. *State,* (1975) 263 Ind. 37, 323 N.E.2d 645, and there was on error in their admission.

## ISSUE IV

The State's witness, Charlotte Hendricks, had been a connecting link between the defendant and the decedent's wife. Upon direct examination, the prosecutor asked her about a certain phone conversation she had had with decedent's wife, Joyce. The defendant objected to the questioning upon the basis of hearsay. However, at the time of the objection, the State had not sought to elicit the content of the conversation but had merely attempted to establish that a telephone conversation had taken place. Thus there was no hearsay violation. *Blue* v. *Brooks,* (1973) 261 Ind. 338, 303 N.E.2d 269; *Indianapolis Newspapers, Inc.* v. *Fields,* (1970) 254 Ind. 219, 259 N.E.2d 651. Subsequently, the following question was asked and answered without further objection from the defense. "Do you recall specifically that location as she gave it to you on the phone?" Answer: "It was a phone booth on the corner of Vann and something, I didn't remember the street. It was across the street from a Burger Chef or Burger Farm or something."

This answer appears to violate the hearsay rule, however there had been no specific objection to it and the earlier objection did not cover it. Additionally, if such evidence was erroneously omitted, it was, nevertheless, merely cumulative of other undisputed and persuasive evidence and not reversible error. Improperly admitted evidence that is corroborative only of competent and unrefuted evidence is not reversible error. *Chatman* v. *State,* (1975) 263 Ind. 531, 334 N.E.2d 673; *Sumpter* v. *State,* (1974) 261

Ind. 471, 306 N.E.2d 95; *Scott* v. *State*, (1973) 260 Ind. 67, 292 N.E.2d 252; *Williams* v. *State*, (1973) 261 Ind. 385, 304 N.E.2d 311.

## ISSUE V

State's exhibits numbers 30, 31 and 32 were photographs of the underside of the counter at the department store where Joyce, the decedent's wife, worked. These exhibits showed three numbers inscribed underneath the counter. First was the number 313. Immediately beneath it was number 774. Further down on the underside of the counter was the number 7816. The defendant challenged the admissibility of these photographs as irrelevant.

"Relevance" is the logical tendency of evidence to prove a material fact. *Lawrence* v. *State*, (1972) 259 Ind. 306, 286 N.E.2d 830; *Thomas* v. *State*, (1968) 251 Ind. 76, 238 N.E.2d 20. Evidence which connects the defendant to the crime is relevant and admissible. *Austin* v. *State*, (1974) 262 Ind. 529, 319 N.E.2d 130. Here, the State attempted to show that defendant's services were procured through the activities of Mrs. DeVillez and Charlotte Hendricks. Mrs. Hendricks testified regarding several telephone conversations between Joyce DeVillez and herself.

The first and second numbers illustrated by the photographs were the telephone area code and prefix for Roseville, Michigan, where Mrs. Hendricks lived. The third number was the last portion of the telephone number of the Jackson House Motel in Evansville. There was ample testimony of telephone calls placed to or from each of these locations. Although the numbers are not complete, the photographs of them made Mrs. Hendricks' more believable and buttressed the State's theory. In this manner, the photographs tended to prove defendant guilty. Therefore, they were admissible.

## ISSUE VI

Defendant also objected, upon grounds of irrelevance, to the admission of State's exhibit number 24, a Delta Airlines

information booklet. This booklet was found inside State's exhibit number 7, the suitcase which defendant had hidden in the bushes across the street from the Jackson House. The maintenance engineer of that motel had previously testified that he saw a "plane trip folder or a bus ticket folder or something like that" identical to exhibit 24 in defendant's room while he was talking to the defendant.

Exhibit 24 tended to connect defendant to the scene of the crime at the pertinent time. Therefore, it was relevant and admissible.

## ISSUE VII

Under this assignment of error, defendant first argues that he was placed in double jeopardy because the waiver hearing required by Ind. Code § 31-5-7-14 (Burns 1973) is an adjudication on the merits. *See Breed* v. *Jones*, (1975) 519 U.S. 421, 95 S.Ct. 1779, 44 L.Ed.2d 346. This proposition was thoroughly explored and refuted by the Court of Appeals in *Seay* v. *State*, (1976) Ind. App., 340 N.E.2d 369 (petition for rehearing). As noted by that Court, the investigation required under our statute, is not an adjudication of delinquency as contemplated by *Breed, supra,* but is merely determinative of the forum. There is no finding that certain acts have been or have not been committed in fact. *See also Atkins* v. *State*, (1972) 259 Ind. 596, 290 N.E.2d 441; *Clemons* v. *State*, (1974) 162 Ind. App. 50, 317 N.E.2d 859.

Defendant's second argument under this assignment is that it is shocking to the conscience to uphold defendant's first degree murder conviction because the accessory was permitted to plead guilty to second degree murder. Some degree of consistency between the convictions of principals and accessories is required. *Schmidt* v. *State*, (1973) 261 Ind. 81, 300 N.E.2d 86; *Combs* v. *State*, (1973) 260 Ind. 294, 295 N.E.2d 366. However, where the principal pleads guilty, and the accessory demands a trial, it is legitimate for a greater sentence to be imposed upon the accessory. *Combs, supra.* We can find no reason why the reverse of this

situation is not also legitimate. Defendant has cited no contrary authority.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 349 N.E.2d 161.