Kimberly McDOWELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 1182S435.

Supreme Court of Indiana.

Dec. 12, 1983.

Charles F. Leonard, Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Kimberly McDowell was convicted by a jury in the Allen Superior Court of Murder, Ind.Code § 35–42–1–(2) (Burns 1979), and class A felony Arson, Ind.Code § 35–43–1–1(a)(1) (Burns Supp. 1983). The trial court subsequently found that the two convictions were merged and accordingly sentenced Appellant to one term of thirty years imprisonment. Appellant now directly appeals and raises the following two issues for our review:

1. whether the Juvenile Court abused its discretion by waiving jurisdiction thereby permitting Appellant to be tried in the Superior Court as an adult; and

2. whether the Superior Court abused its discretion by finding Appellant competent to stand trial.

I

The Allen Juvenile Court had exclusive original jurisdiction over the instant case pursuant to Ind.Code § 31–6–2–1 (Burns 1980) since the State's Petition to Adjudge Delinquency was filed on August 3, 1981. We note that said statute was amended effective September 1, 1981, to divest the juvenile court of jurisdiction over an individual for an alleged violation of Ind.Code § 35–42–1–1 (murder) if said individual was at least sixteen-years-old at the time of the alleged offense. Ind.Code § 31–6–2–1(d) (Burns Supp.1983) Ind.Code § 31–6–2–4 (Burns 1980) controlled the waiver of jurisdiction by the instant juvenile court. That

statute provided in pertinent part as follows:

"(a) Waiver of jurisdiction refers to an order of the juvenile court that waives the case to a court that would have jurisdiction had the act been committed by an adult. *Waiver is for the offense charged and all included offenses.*

. . . . .

(c) Upon motion of the prosecutor and after full investigation and hearing, the juvenile court *shall waive* jurisdiction if it finds that:

(1) The child is charged with an act that would be *murder* if committed by an adult;

(2) There is probable cause to believe that the child has committed the act; and

(3) The child was ten [10] years of age or older when the act charged was allegedly committed; *unless it would be in the best interests of the child and of the safety and welfare of the community for him to remain within the juvenile justice system.*" (emphasis added).

The following is a summary of the evidence presented during Appellant's waiver hearing. At the outset, both parties stipulated that Appellant was over sixteen-years-old when the instant offenses were committed. They also stipulated that the victim, fourteen-year-old Tabatha Mohler, died from asphyxiation due to severe smoke inhalation. On July 21, 1981, the Fort Wayne residence of Robert Muller caught fire and burned. Firemen found Mohler, one of the twelve occupants in the house, dead in her bed. Two firemen observed a blond-headed girl on a blue bicycle riding away from the fire. Appellant has blond hair. A man testified that he was with Appellant several hours after the fire and smelled gasoline on her clothes. A juvenile detained at the Wood Youth Center between July 11 and July 17, 1981, said that Appellant wrote a note to her during their coincidental detainments which indicated that Appellant was going to burn her foster parents' home. Robert Muller had been Appellant's foster father since March, 1981. Another of Muller's foster children testified

that Appellant told her that she hated Muller and planned to kill him with a knife. A chemist and certified fire inspector testified that the fire at the Muller residence was incendiary in nature and was caused by the use of an accelerant. Additional evidence was presented which focused on Appellant's family history, behavior problems and deafness. Although a Psychologist, Sherwin Kepes, stated that long term incarceration without counseling would hurt Appellant, he did not know whether Appellant would repeat the conduct she was accused of. Appellant's Exhibit J contains a lengthy evaluation of Appellant prepared by Kepes which reveals Appellant's problems with deafness, her mother's inability to control her, her actions when frequently running away, her failure to attend school and her inability to understand or to rationally adjust to her emotional impulses. Also included in the evidence was the Allen Juvenile Court's November 3, 1978, order adjudging Appellant to be a delinquent child based on a number of juvenile code violations.

After its waiver hearing, the Allen Juvenile Court entered the following order:

"The Court having matter under advisement now finds that the Juvenile, Kimberly McDowell, was born on December 6, 1964; was over Sixteen (16) years of age and under Eighteen (18) years old at time of the alleged act; that the juvenile Court had jurisdiction by virtue of Petition filed August 3, 1981 for Felony Murder and Arson, Class A; that probable cause exists to believe Kimberly McDowell committed the acts charged in the petition; that within ten (10) months the Juvenile will be an adult; that the Juvenile Court has exhausted all reasonable alternatives for dealing with the said Juvenile; and the Court has not found from the evidence that it would be in the best interests of the juvenile and the safety and welfare of the community for her to remain within the juvenile system.

The Court now orders Kimberly McDowell waived to the Allen Superior Court criminal trial division having jurisdiction over adults for the offenses alleged and orders the said Juvenile, Kimberly McDowell, remanded to the custody of the Sheriff of Allen County, Indiana without bond."

■ Appellant now does not contend that the Juvenile Court erred by finding sufficient evidence showing her age, the nature of her alleged criminal acts and probable cause to believe that she committed the crimes for which she was charged. Appellant instead argues that the Juvenile Court abused its discretion by failing to find sufficient evidence indicating that it was in Appellant's best interest and in the best interests of the safety and welfare of the community for her to be retained within the juvenile justice system. Appellant points out that certain evidence was presented during her waiver hearing which suggested that it would be in the best interest of Appellant and of the community for her to remain within the juvenile justice system. It is well-settled, however, that in reviewing a sufficiency claim, this Court will neither weigh the evidence nor judge the credibility of the witnesses but rather will consider that evidence most favorable to the State with all reasonable inferences therefrom. *Hatton v. State,* (1982) Ind., 439 N.E.2d 565; *see also Shepard v. State,* (1980) Ind., 404 N.E.2d 1; *Atkins v. State,* (1972) 259 Ind. 596, 290 N.E.2d 441, *reh. denied* (1973). In the instant case, the Allen Juvenile Court noted that the alternatives available for Appellant in the juvenile system had been exhausted. Moreover, there is evidence in the Record which amply demonstrates that Appellant was unable to control herself and therefore represented a threat to the safety of the general community. The Juvenile Court was entitled to give the evidence before it whatever weight it deemed appropriate. *Trotter v. State,* (1981) Ind., 429 N.E.2d 637. We accordingly hold that the Allen Juvenile Court did not abuse its discretion by waiving its jurisdiction over Appellant.

II

■ After the Juvenile Court had waived its jurisdiction over Appellant but prior to

trial, Appellant filed a "Motion to Determine Competency." Said Motion alleged Appellant's incompetency due to her deafness, lack of education, low level of intelligence and general inability to communicate. Appellant now concedes that she did not claim incompetency on a psychological or insanity basis. The trial court subsequently conducted a hearing on Appellant's competency pursuant to Ind.Code § 35–5–3.1–1 (Burns 1979) [repealed effective September 1, 1982].

The Record of Appellant's competency hearing indicates that the evidence regarding Appellant's competency was conflicting. Although both of Appellant's interpreters stated that they doubted Appellant's cognitive abilities, two court-appointed psychiatrists testified that Appellant was able to understand the nature of the charges against her and to assist in her defense. Interpreter Barbara Baker testified that Appellant once told her that she was in jail because "Tabatha was dead" and on another occasion told her that she was in jail because she had run away. The trial judge considered the apparent conflicts in the evidence and determined that Appellant was competent to understand the nature of the charges pending against her and to cooperate with her attorney in her defense. The trial judge specifically decided as follows:

"Well, the question here is whether she is competent to understand the nature of the charges against her, and to assist her counsel in a defense. It appears to me there is not really, because of her limited communication skills, and what we believe to be her limited capacity to understand, enough real evidence to determine that question one way or the other. One thing is crystal clear. She has a lack of formal education, a low level of understanding of affairs, and some substantial problems in communicating what is in her mind. But about what's in her mind, or not in her mind, we're all doing a lot of guessing. There is no question that assuming the responsibility to defend her on charges of this nature, it's going to be a difficult task, because of the limitations involved. I'm far less concerned about whether she understands what a jury is, or what a witness is, or what an oath is, because she doesn't need to understand those things to cooperate with a lawyer in her defense. I'm far more interested in whether she is able to give you her version, or her story, of the events of the day, the period surrounding the occurrence, the events which led to these charges. Presumably, she's been able to do that. . . . Mr. Avery [Appellant's trial counsel], there's no doubt in the court's mind that you're laboring under some severe handicaps and circumstances in which the responsibilities are awesome in all your dedication to doing that to the best of your ability. I think there is some difference between that and whether she lacks the competency. And I don't believe that I'm any surer that she lacks that competency than you are that she does. Neither one of us really knows. And because of her lack of communication skills, there is no way for either one of us to be really sure. I suppose if I were going to be completely candid, I would write down on the docket sheet that it has not been demonstrated to the court that she lacks competency to understand the nature of the charges against her and to assist in her defense, which might be a more accurate way to put it than what I've put it, which is that I will find that she is competent to understand the nature of the offenses charged, and to cooperate with her attorney in her defense against the charges against her."

Under circumstances such as those of the instant case, we are bound to a general review of the record and the evidence disclosed therein. We will not reweigh the evidence nor reassess the credibility of the witnesses and will not overturn the trial court's determination unless the trial court's decision amounts to a clear abuse of discretion. We now find ample evidence tending to establish Appellant's ability to comprehend the nature of the proceedings against her and to communicate with her attorney through interpreters. Moreover, we find that the trial judge's determination

indicates no unreasonable, arbitrary or unconscionable attitude on his part. Accordingly, the trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.